## In the Matter of the Estate of CORNELIA M. STEWART, Deceased.

The Collateral Inheritance Act of 1885 (Chap. 483, Laws of 1885), contemplates not only the taxation of such interests as are capable of valuation at the death of a decedent, but every interest immediate or future, derived under him, not excepted by the act.

A party who takes upon the execution of a power of appointment contained in a will, takes under and by virtue of the will, and if such party is not one excepted by the act, the property which passed to him under the power, is taxable.

Contingent interests given by a will, which after the death of the testator are converted, by the happening of the event upon which they are limited, into actual vested estates, may then be appraised and taxed under the provision of said act (§ 13) which authorizes the surrogate to appoint an appraiser of property subject to the payment of a tax, "as often and whenever occasion requires," who shall "appraise the same at its fair market value."

While, where the question is as to whether a certain subject of taxation is embraced within the said act, and brought within the power of taxation, the act should be strictly construed in favor of the citizen, where a subject is clearly within the scope of the act, and exemption is claimed on the ground that proper machinery has not been provided for accomplishing the legislative purpose in the particular instance, a liberal construction should be applied, and if by fair and reasonable construction of its provisions the purpose of the statute can be carried out, such interpretation should be given to effectuate the legislative intent.

The provision of the Code of Civil Procedure (§ 2650) suspending action by an executor after he has been served with a citation upon a petition to revoke probate until a decree is made in the proceeding, does not take away the right to charge interest, prior to such decree, on a tax imposed by the act. The case is provided for by the provision of the act (§ 5) directing that a modified rate of interest should be charged where "by reason of claims made upon the estate, necessary litigation or other unavoidable cause of delay, the estate of the decedent" cannot be settled.

(Argued February 1, 1892; decided March 1, 1892.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made November 13, 1891, which reversed in part and affirmed in part an order of the surrogate of the county of New York, assessing and fixing

the collateral inheritance tax under the will of Cornelia M. Stewart, deceased.

The facts, so far as material, are stated in the opinion.

*Simon W. Rosendale, Attorney-General,* for appellants. The property passing to the trustee, and through him to Charles J. Clinch and Sarah N. Smith, is liable to taxation under chapter 483 of the Laws of 1885, as amended by chapter 713 of the Laws of 1887, for the reason that it was property which passed by the will of the testatrix, who was a resident of the state, to the persons named who did not occupy such relationship to the testatrix as to exempt the transfer from the payment of the tax. (*Middleton* v. *Crofts,* 2 Atk. 661; *Lady Gresham's Case,* Mo. 261; *Smith* v. *Garey,* 2 Dev. & B. [N. C.] Eq. 42; *Wallace* v. *Myers,* 38 Fed. Rep. 184; *Mager* v. *Grima,* 8 How. [U. S.] 490; *Scholey* v. *Rew,* 23 Wall. 331; *Eyre* v. *Jacob,* 14 Grat. 422; *Miller* v. *Com.,* 27 id. 110; *Strode* v. *Com.,* 52 Penn. St. 181; *In re Howe,* 112 N. Y. 103; *Comrs.* v. *Williams,* 13 Penn. St. 29.) The property passing to the trustee, Hilton, by virtue of the codicils to the will, was liable for the tax without regard to the persons or corporations which might ultimately become entitled to it or receive it upon the execution of the trust by the trustee. (Perry on Trusts, §§ 305, 310, 311, 316, 318, 389; *Nichol* v. *Walworth,* 4 Den. 385; *Bennett* v. *Garlock,* 79 N. Y. 302.) It is submitted that the construction given by the General Term to the Collateral Inheritance Law is an extremely narrow and technical one, which, if adopted, will, in a large class of cases, defeat the plain object and intent of the law. (Laws of 1885, chap. 483; Laws of 1887, chap. 713; Laws of 1889, chap. 479; *Bradish* v. *Gibbs,* 3 Johns. Ch. 549; *Little* v. *Lewis,* 7 id. 44.) The surrogate properly held that the tax on the legacy given to the appellant Clinch directly in the will, which amounted to one-fourth of the residuary estate, must bear interest from the expiration of eighteen months after the death of the testatrix. (Laws of 1887, chap. 713, §§ 4, 5.) The liability to pay interest is not affected by section 2650 of

the Code of Civil Procedure. (*McKnight* v. *Chauncey*, Seld. Notes, 97.)

*Benj. F. Dos Passos* for appellants. There being a clearly defined intention in the act of 1885 to tax estates or property passing by will to collateral heirs through powers of appointment, the rule of strict construction relied on by respondents does not apply. (*In re Enston*, 113 N. Y. 184; *In re Romaine*, 127 id. 88; Cooley on Taxn. 205; 3 Pars. on Cont. 287; *Stief* v. *Hart*, 1 N. Y. 30.) The rights of the appellants, upon the question of appraisement, are not affected by section 2 of chapter 713 of the Laws of 1887, as that section has no application to the power in trust devised to Hilton. (Laws of 1885, § 2, chap. 483; Laws of 1887, chap. 713, § 25, as amended by Laws of 1889, chap. 479; *In re Miller*, 110 N. Y. 216; *In re Kemeys*, 56 Hun, 117; *Sherill* v. *Christ Church*, 121 N. Y. 701.) If section 2 of the amendatory act controls, then it is the "property or fund" by which the estate is supported (such is the language of section 2) which shall be appraised, and the trust fund to Hilton could have been appraised immediately at decedent's death. (Laws of 1887, chap. 713, §§ 2, 6; *U. S.* v. *Trucks*, 27 Fed. Rep. 541; *In re Clark*, 1 Connelly, 431; *In re Vanderbilt*, 10 N. Y. Supp. 239; *Com.* v. *Duffield*, 12 Penn. St. 279; *Com.* v. *Williams*, 13 id. 29; *Com.* v. *Sharpless*, 2 Chest. 246; *Com.* v. *Schumacher*, 9 L. Bar. 199; *Nieman's Appeal*, 131 Penn. St. 351.) The estate passing to Hilton as trustee is taxable and appraisable under the statute against the trustee, irrespective of the right on the part of the estate to tax the interest of the beneficiaries. (Laws of 1885, chap. 483, §§ 6, 7, 8.)

*Horace Russell* and *Jabish Holmes* for respondents. The tax was unlawfully imposed by the surrogate upon the property conveyed to Clinch under the power of appointment, because the Collateral Inheritance Act provides no method by which the value of such property could be ascertained at the time of decedent's death, and the act imposes no tax upon Clinch for receiving such an interest, although by the exercise

of the power he received a part of Mrs. Stewart's property. At the time the appraiser was appointed there was only a possibility that Clinch might receive property under the power. Such possibility had no market value. (Laws of 1887, chap. 713; Laws of 1889, chap. 479; *In re Enston*, 113 N. Y. 174; *In re Howe*, 112 id. 103; *In re Cager*, 111 id. 343; *In re Vassar*, 127 id. 1; Sugden on Powers [8th ed.], chap. 9, § 3; *Duke of Marlborough* v. *Lord Godolphin*, 2 Ves., Sr., 61; *Southby* v. *Stonehouse*, 2 id. 612; *Jackson* v. *Davenport*, 20 Johns. 537; *In re McPherson*, 104 N. Y. 306; *In re Hopkins*, 6 Dem. 1; Redf. on Surr. Pr. [4th ed.] 562, 563; *In re Lefever*, 5 Dem. 184.) The part of the order directing that the tax imposed on the one-quarter of the residuary estate passing directly under the will to Charles J. Clinch should bear interest at six per cent per annum from April 25, 1888, was erroneous. (*Fraser* v. *People*, 6 Dem. 174; Code Civ. Pro. § 2650; *In re Prout*, 117 N. Y. 650; *A. B. & C. Co.* v. *Conner*, 103 id. 502; *Brown* v. *Hiatts*, 15 Wall. 177; *Hoare* v. *Allen*, 2 Dall. 102; *Foxcraft* v. *Nagle*, 2 id. 132; 1 Sedg. on Dam. 491, § 340; *Stevens* v. *Barringer*, 13 Wend. 639.)

*Martin & Smith* for James Clinch Smith, executor, respondent. Sarah N. Smith was not liable to the collateral inheritance tax upon the interest acquired by her on January 16, 1890, by the transfer from the trustee. (Code Civ. Pro. § 3343; Code Crim. Pro. § 718; *People* v. *Mayor, etc.*, 9 Barb. 535; *Sherman* v. *Elder*, 24 N. Y. 381; *Ayres* v. *Lawrence*, 59 id. 198; *People* v. *N. Y. & M. B. R. R. Co.*, 84 id. 256; *Nicoll* v. *N. Y. & E. R. R. Co.*, 12 id. 121; *Mendenhall* v. *Klinck*, 51 id. 246; *Smith* v. *Baylis*, 3 Dem. 567; *In re Cager*, 111 N. Y. 343.) If it be claimed that chapter 479, Laws of 1889, amending section 25 of chapter 713, Laws of 1887, makes the latter law applicable to the "estate" acquired by Mrs. Smith on January 16, 1890, and that the taxability of that estate must be determined by the provisions of this law, and not by those of the law of 1885, the appellant's case is made still clearer. (*In re Arnett*, 49 Hun, 599.)

ANDREWS, J.    This appeal involves questions under the law for the taxation of collateral inheritances, passed June 10, 1885.

By the will of Cornelia M. Stewart, who died October 26, 1886, the testatrix gave one-half of her residuary estate to Henry Hilton, in trust, to apply in his discretion such portion thereof as he might deem expedient to the erection and endowment of a seminary of learning for women, and the erection of buildings and institutions connected with the Memorial Cathedral Church of Garden City, Long Island, with power to appoint any part of the trust estate which in his opinion would not be needed or required for the purposes of the trust, among any of the legatees named in the will.    The will was admitted to probate November 13, 1886.    The surrogate, on motion of the executors April 25, 1887, assessed and fixed the collateral inheritance tax upon the legacies given in Mrs. Stewart's will, which tax was paid, and on like motion appointed an appraiser " to appraise for the purpose of said tax the clear market value at the time of the death of the decedent, of the property which passed by the residuary clause of the will."    No appraisal was made under the clause in the order until after the exercise of the power of appointment by the trustee.

This power was exercised for the first time on the 16th day of January, 1890, three years and more after the death of the testatrix.    There were nineteen legatees in the will, including three half sisters of the testatrix.    The other legatees were nephews, nieces and grandnieces.    The trustee, after applying a portion of the trust estate to the purposes of the cathedral, appointed the balance of the trust fund, amounting to more than two million dollars, among ten of the nineteen legatees, one-tenth of which (being the sum of $248,540.16) was appointed to Charles J. Clinch, a nephew of the testatrix.    On the 19th of February, 1890, the appraiser appointed under the order of April 25, 1887, filed his report by which he appraised the value of the portion of the trust fund received by Charles J. Clinch at the sum named and decided that it was subject to a tax of $12,427.

The main question is whether the sum so received by Charles J. Clinch under the power of appointment is taxable under the law of 1885. The law was amended in 1887, and again in 1889. The question is the same as if these amendments had not been made, and it will avoid complication to treat the subject as if the statute of 1885 was alone applicable to the case and had remained unaltered. The contention that the sum received by Charles J. Clinch under the power of appointment is not taxable, is placed upon two propositions, *first*, that until the power of appointment was actually exercised, Charles J. Clinch had at most a mere possibility that he might share in the distribution, and had no estate vested or contingent in the fund, and that this possibility or chance was incapable of any valuation at the decedent's death, as he might receive something or nothing, depending on the will of the donee of the power, and *second*, that the statute contemplates the taxation of such interests only as are capable of valuation at the death of the decedent, and provides no method for taxing an uncertain and contingent interest which may never vest in possession. It is doubtless true that Charles J. Clinch at the death of Mrs. Stewart took no legal interest in the trust fund given to Hilton. The will, while it designated the class of persons for whose benefit the power of appointment should be exercised, nevertheless conferred upon the trustee the power to select any one or more of the class as the objects of the power. The trustee could appoint the whole property to one or more of the sisters, or to one or more of the nephews. He could exclude any one or more of the legatees from any share in the distribution. When he had appropriated such part of the fund as he deemed requisite for the purposes of the school and the cathedral, he was bound to appoint the remainder among individuals of the class, and the performance of this duty might be compelled if he had refused to exercise the power, but the court could not control his discretion in the selection of the beneficiaries. (*Delaney* v: *McCormack*, 88 N. Y. 174.) Until the power had been exercised no one of the class could maintain that he was entitled to any part of the fund. It is very clear

then that there was no basis for fixing a tax at the death of Mrs. Stewart, on the mere possibility which Charles J. Clinch had, that the power of appointment might be exercised in his favor.     If authority is needed for so plain a proposition, the case *In re Cager* (111 N. Y. 344) is ample to sustain it. The possibility, however, became a certainty when on the 16th day of January, 1890, the donee of the power of appointment exercised it in favor of members of the class mentioned in the will, and set apart to Clinch the tenth part of the trust fund.     To the extent of such application Clinch became vested as of that date with an interest in the estate of Mrs. Stewart. If the $248,540.16 received by him under the power had been given to him directly by the will, it would unquestionably have been subject to taxation.     It is claimed to be exempt in the actual situation, because the legislature failed to provide a method for the taxation of interests acquired under the circumstances of this case.     The subjects of taxation under the act of 1885, are declared and defined in the first section.     They include "all property which shall pass by will or by the intestate law of this state from any person who may die seized or possessed of the same * * * to any person or persons, or to a body politic or corporate, in trust or otherwise, or by reason whereof any person or body politic or corporate shall become beneficially entitled in possession or expectancy to any property, or to the income thereof, other than to and for the use of father, mother, husband, wife, children, brother and sister, and lineal descendants born in lawful wedlock, and the wife and widow of a son and husband of a daughter, and the societies, corporations and institutions now exempted by law from taxation."     The tax imposed is five dollars on every hundred dollars "of the clear market value of such property." Looking at this section alone it would seem to be clear that the property which passed to Clinch under the power of appointment was taxable.     The tax imposed by the act is in form a tax on property passing by a will, or under the statute of descents or distribution.     The tax is imposed on all such property, except such as passes to persons or corporations

within the clause of exemption. Estates in possession or expectancy, gifts of the corpus or of the income, and estates in trust are alike embraced within the comprehensive words of the section. The obvious intent of the legislature was to impose a tax on every interest, immediate or future, derived under a testator or intestate, not embraced in the exception. No collateral inheritance was excepted in terms, and the object and spirit of the act are alike opposed to any exemption of such interest from the operation of the section. Whether the section embraces in its scope property transferred to collateral relatives of the testatrix under the power of appointment, depends upon the consideration whether within the language the property so appointed passed "by will" of the testatrix to the appointees, or whether they became entitled thereto "by reason" of the will. If the will was the source of their title then they took under the will, or by reason of the will, and their interests are brought within the words of the section. The nature of estates passing under powers of appointment is well settled. "An estate," says Chancellor KENT (4 Kent's Com. 338), "created by the execution of a power, takes effect in the same manner as if it had been created by the deed which raised the power. The party who takes under the execution of a power takes under the authority and under the grantor of the power, whether it applies to real or personal property, in like manner as if the power and the instrument creating the power had been incorporated in one instrument." Where the donee of the power has the right of selection, the interest appointed vests in the appointee at the time of the appointment, but his title relates to and is acquired under the instrument creating the power. (*Jackson* v. *Davenport*, 20 Johns. 537; Sugden on Powers, vol. 2, p. 22.) We think there can be no reasonable doubt that the appointees under the power of appointment took their interests under and by virtue of the will, and not in a legal sense under the instrument of January 16, 1890, in execution of the power.

But it is insisted that assuming that the interest which was vested in Clinch by the exercise of the power of appointment,

is taxable within the true meaning of section one of the act of 1885, nevertheless the legislature in its scheme for assessing and collecting taxes imposed by the act, has failed to provide any method for valuing or taxing contingent or uncertain interests not capable of valuation and assessment immediately on the death of the decedent. Before considering this contention, the rule by which the court should be guided in the construction of the statute may properly be adverted to. Where the question is whether a certain subject of taxation is embraced within the act, and brought within the power of taxation it was held in *Matter of Enston* (113 N. Y. 174), that the statute should be strictly construed in favor of the citizen, since it assumes to impose a special burden upon particular property and persons, and is not in any proper sense a general tax. The question there was whether a certain subject was taxable under the provisions of the first section. Where a particular subject is within the scope of that section and exemption from taxation is claimed on the ground that the legislature has not provided proper machinery for accomplishing the legislative purpose in the particular instance, a liberal rather than a strict construction should be applied, and if by fair and reasonable construction of its provisions the purpose of the statute can be carried out, that interpretation ought to be given to effectuate the legislative intent.

There are two sections in the act of 1885, which prescribe the procedure for fixing the valuation and assessing property subject to taxation. These are sections 2 and 13. Section 2 relates to a special class of cases, viz., cases where property is devised or bequeathed for life, or a term of years, to a person whose interest is exempted from the payment of any tax, with remainder over to collaterals or strangers in blood. In these cases the section prescribes that the (entire) property passing under such a devise or bequest shall be appraised "immediately after the death of the decedent, at what was the fair market value thereof at the time of the death of the decedent," and after deducting the value of the estate for life or years, that the tax prescribed by the act on the remainder " shall be imme-

diately due and payable." Provision is made that the party beneficially interested in the property chargeable with the tax may give a bond to pay the tax when he may come into the actual possession and enjoyment. This section contains the only provision to be found in the act prescribing in terms the time when an appraisal shall be made, or which directs that the value of the subject of the tax shall relate to "the death of the decedent." The section obviously has no relation to the case now in question. Hilton was not an exempt person within the first section. He took, under the will of Mrs. Stewart, no estate for life or years, nor was there any bequest or devise of any remainder in the trust property. Section two has reference to a specified class of cases only, in which the case now in question is not included. The section primarily relates to certain legal vested estates for life or years, and remainders limited thereon, when the value of both estates can be determined at the death of the testator. We must look elsewhere to ascertain how the property is to be valued and the tax determined in the numerous other cases arising on wills, not embraced in the class specified in section two.

Section 13 is a general section prescribing the method of appraising and valuing property subject to the payment of a tax under the act. By that section the surrogate is authorized to appoint an appraiser of such property "as often and whenever occasion requires," who, at a time and place appointed, of which notice is to be given, shall "appraise the same at its fair market value," and make his report, from which the surrogate shall "forthwith assess and fix the then cash value of all estates, annuities and life estates, or terms of years growing out of said estate and the tax to which the same is liable." It is to be noticed that this section does not, as does the second section, require the valuation to be made immediately upon the death of the decedent; on the contrary, it contains the significant words that an appraiser may be appointed "as often as, and whenever occasion may require." Nor does section 13 prescribe that the property appraised thereunder shall be appraised "at what was the fair market value thereof at the

time of the death of the decedent," as is required in the cases falling under the second section. . Under section 13 the appraiser is to appraise the property " at its fair market value," and the surrogate, on the coming in of the report, is to assess and fix the " then cash value " of all estates, etc., upon which the tax is chargeable. There are no limiting words such as are found in section 2. Section 13 is the section which, in the great majority of cases, governs, since the cases arising under section 2 form but a small proportion of the cases within the provisions of wills.

The contention on the part of the appointees under the power is that the scheme of the statute only contemplates cases where the interests created are capable of valuation at the death of the testator. This would exclude all future contingent interests in real or personal property created by will. Such an intention certainly was not in the mind of the legislature, and we are asked to exclude this large number of cases from the operation of the act, upon a construction which imports into the 13th section the limitation contained in section 2. The claim of the appointees under the power must be allowed if the statute provides no scheme for the taxation of contingent and uncertain interests, although such interests may be within the purview of the first section. It is not enough for the legislature to declare that such interests are taxable. If no mode is provided for assessing and collecting the tax, the law is imperfect and cannot as to such interests be executed. But we think that the 13th section does include cases like the present, and that contingent interests given by a will, which after the death of the testator are converted, by the happening of the event upon which they are limited, into actual vested estates, may then be appraised and taxed under the provisions of section 13. It is true that section 4 seems to contemplate that all taxes are ascertainable at the death of the decedent, since it declares that " they shall be due and payable ". at that time, and provides for charging interest thereon from, " the time the tax accrued." We think the implication from this section ought not to overbear the intention of the

legislature indicated in section one, to subject all interests derived under wills to taxation, except those within the exception, nor prevent such a construction of section 13 as will bring the present case within its purview.   We are, therefore, of opinion that the interest in question was taxable.

Another question is made.   The respondent Clinch received under the will of Mrs. Stewart a legacy of $1,498,288.32, upon which was imposed a tax of $74,914.42, which tax was by the decree of the surrogate made to bear interest at six per cent, from April 25, 1888, a date eighteen months after the death of the testatrix.   Intermediate the death of the testatrix and the expiration of the eighteen months, proceedings were instituted for the revocation of the probate of the will, which were not terminated until January 16, 1890.   Section 2650 of the Code suspends action by an executor after he has been served with a citation upon a petition to revoke probate, until a decree is made in the proceeding, except for the preservation of the property, the collection and payment of debts, and acts expressly authorized by the surrogate upon notice to the petitioner.   It is claimed that interest should not be charged during this period.   But we think the 5th section of the act is an answer to this claim.   It was the later statute and it enacts that a modified rate of interest shall be charged where " by reason of claims made upon the estate, necessary litigation, or other unavoidable cause of delay the estate of the decedent " cannot be settled, etc.   The delay in this case was in consequence of litigation.   The legislature provided for cases like this by reducing the rate of interest during such delay.   The courts cannot interfere.   There is no room for construction.

The conclusion is that the order of the General Term, so far as it reverses the decree of the surrogate, should be reversed, and that the decree of the surrogate should in all things be affirmed.

All concur, except MAYNARD, J., not sitting.

Ordered accordingly.