FIDELITY TRUST CO. v. McCLAIN.

(Circuit Court, E. D. Pennsylvania.       February 1, 1902.)

No. 7.

1. INTERNAL REVENUE—PASSAGE OF LEGACIES—INTERVENING ESTATES.

Prior to the passage of the revenue act of 1898, providing for a tax on legacies or distributive shares arising from personal property passing, after the passage of the act, from any person possessed of such property, by will or otherwise, a testator died leaving a will giving real and personal property to his wife for her life, with remainder to his children named in the will, with a power to the wife to direct by her will the respective shares to be received by such children. Testator's wife died after the passage of the revenue act, leaving a will in which, pursuant to the power given by her husband's will, she made division of the estate among his children. Held that, notwithstanding the wife's intervening estate, the legacies passed to the children by virtue of the will of their father, who was the person possessed, within the meaning of the statute, and hence such legacies were not subject to the tax thereby imposed.

2. SAME—PERSON HOLDING INTERVENING ESTATE—POWER TO APPORTION.

The wife's power to direct the respective shares to be received by the children did not prevent the legacies from passing to them by their

father's will, since the legacies as created and fixed by the will of the father could not be changed by that of the wife, but merely ascertained or apportioned.

At Law. Action to recover United States internal revenue taxes alleged to have been unlawfully assessed by the defendant as collector. The defendant demurred to the plaintiff's statement.

John Marshall Gest, for plaintiff.

J. Whitaker Thompson, Asst. U. S. Atty., and Jas. B. Holland, for defendant.

ARCHBALD, District Judge.[1] The plaintiff declares for internal revenue taxes assessed by the defendant on certain legacies, and paid by it under protest. The facts set out in the declaration, to which the defendant has demurred, are about as follows: George H. Crosman died May 28, 1882, leaving a widow and four children, and the issue of two others, who were dead. By his will, which was probated June 6th following, after one or two specific bequests, he gave to his wife, Hannah B. Crosman, the rents, issues, and profits on all the residue of his estate, real and personal, for life, and upon her death he provided that:

"After the termination of the entire life interest hereinbefore given to my wife, I do give, devise, and bequeath to my six children, or their issue, as the case may be, in regard to any who may be deceased at the time of the death of my wife, namely, George, Heron, and Mary Crosman, and Margaret Phillips, and the issue of my deceased sons, Frederick and Alexander Crosman, all the rest, residue, and remainder of my whole estate, real and personal, in such manner, shares, and proportion, however, as she, my said wife, Hannah B. Crosman, by her last will and testament, shall order, direct, limit, and appoint. And in case she, my said wife, should not, by any such will and testament, order, direct, limit, and appoint the respective shares and proportions of my said children or their issue, or the manner in which they shall be held, then the said rest, residue, and remainder of my estate, after the death of my said wife, shall be equally divided, share and share alike, among my children, their heirs and representatives; the issue of my deceased child or children taking, however, and only receiving, such part or shares thereof as his, her, or their deceased parent would have had and taken if living."

He also appointed his wife executrix. Mrs. Crosman lived until December 28, 1898, and then died, leaving a will, in which, in execution of the power of appointment given her by her husband, she directed that to the actual amount of his estate should be added the advancements made by him to his children in his lifetime, the whole to be then divided into six equal shares, each share being charged with the advancements made to the child to whom it was to go, one such share being given to each of the four children, George H. Crosman, J. Heron Crosman, Margaret C. Phillips, and Mary C. Thornton, and one share to her executors in trust for the children of Alexander F. Crosman, deceased, and another in trust for her granddaughter Frederika J. Crosman, daughter of Frederick E. Crosman, deceased.

After the death of Mrs. Crosman, the Fidelity Trust Company, as her executor, filed an account for her as executrix of her husband,

[1] Specially assigned.

upon which the orphans' court of Philadelphia made distribution in accordance with the directions given by her will, and upon the legacies so ascertained the collector levied the tax claimed. The question is whether they were subject to it, and this depends on when the legacies passed,—if by the will of the father, then, as that long antedated the passage of the revenue act of 1898, they were not so taxable; but if by the will of the mother, in December, 1898, then they were.

That it is the passage of the legacy, and not the time of its vesting, which determines whether it is subject to a tax, is clearly pointed out in McClain v. Pennsylvania Co., 47 C. C. A. 529, 108 Fed. 618; and the same case decides that "the person possessed," within the meaning of the statute, is the decedent from whose estate the legacy really comes, and not the one to whom it may have been given by him intermediately in charge or trust for such beneficiary. This case, in effect, disposes of the question now in controversy. The present legatees take from their father, and by virtue of his will, notwithstanding that the mother was given the power to determine the amount to which they should be relatively entitled. It is their father's estate that is distributed to them, and not their mother's. Neither can she be regarded as the person possessed because she had a precedent life interest, and theirs is an interest in remainder after her. The relative rights of their mother and themselves were fixed by the will of the father, and both passed from him to them thereby. They took nothing from their mother; they simply took after her. The corpus of the estate was indeed passed on to them from her after she was through with it, but it was passed simply in continuation of its original passage from their father, who was clearly the person possessed, within the meaning of the act. In no sense are they the legatees of their mother, while they are the direct legatees and beneficiaries of their father, having been actually named by him in his will.

It adds nothing to the argument in favor of the tax that the extent of the children's interest was left to be determined by Mrs. Crosman if she so desired. The exercise of this power did not extend to the naming of the persons who were to take. They were fixed by the will of the father, and could not be changed. Wickersham v. Savage, 58 Pa. 365. She simply had authority to decide what should be the share of each. The legatees were not created by her will; they are merely ascertained by it.

In Com. v. Duffield, 12 Pa. 277, the testator, a resident of Maryland, left a fund to his executors in trust, to pay the income to his sister for life, and empowered her to dispose of one-half of the principal at her death. She executed the power by a bequest to her niece, and the question came up, on the probate of her will in Pennsylvania, whether a collateral inheritance tax was due on the fund so passing, and it was held that it was not. "An appointee," says Gibson, C. J., "derives title immediately from the donor of the power, by the instrument in which it was created, and consequently not under, but paramount to, the appointor by whom it was executed." The case of Com. v. Williams' Ex'rs, 13 Pa. 29, is quite

similar. A testator devised real and personal estate in trust for his daughter for life, and after her death for the use of such persons as she by will should appoint, and it was held that the estate passed to her appointees, not by virtue of her will, but by that of her father, she having a mere power to designate. This was a tax case also, and the question when the estate passed was directly in issue; for, if it went by the will of the daughter, as the beneficiaries were collateral it was subject to a collateral inheritance tax, while if they took from the original testator they were lineal descendants, and it was not. Both these cases go further than is necessary to meet the one in hand, for here we have the parties who are to take, directly established by the original will, and only the extent of their taking to be determined by the donor of the power, while in each of those cited the fixing of the beneficiaries was also left open, and yet the estate was held to pass at the death of the first testator.

The English cases on the subject are instructive. By the rule which there prevails, as a general power of appointment enables the donor of the power to dispose of the property in his own favor it is regarded as in effect a part of his estate, and it might therefore be supposed that an interest which is created by the exercise of such a power would be held to have been derived from it. But such is not the case. In Braybrooke v. Attorney General, 9 H. L. Cas. 182, it was decided that the interest was derived, not from the person exercising the power, but from the one who created it. This was followed in Re Barker, 7 Hurl. & N. 109, where the facts were as follows: A testator died in 1850, devising his estate to his wife for life, and after her death on such further trusts as she by will might appoint. The wife died in 1859, devising the estate to the testator's niece. In the meantime the act of 16 & 17 Vict. c. 51, had been passed, imposing a succession tax on "every past or future disposition of property by reason whereof any person has or shall become beneficially entitled to any property or the income thereof, upon the death of any person dying after the time appointed for the commencement of the act," but varying it according to relationship, and the question came up as to the rate to be paid. If the estate which the niece took was to be regarded as derived from the appointment of the wife, they being strangers in blood, the duty would be 10 per cent., but if from the husband, who created the power, it was but 3 per cent., and it was held taxable only at the latter rate. Attorney General v. Pickard, 3 Mees. & W. 552, is to the same effect, Lord Abinger declaring that "nothing can be better settled than the general rule that interests created by the execution of a power take effect precisely in the same manner as if created by the instrument which gives the power"; and this being made the basis of determining the succession tax there decided to be due. In re Lovelace's Settlement, 4 De Gex & J. 340, is the same way, and, after a review of all the cases, the doctrine was again asserted in Attorney General v. Mitchell, 6 Q. B. Div. 548. So, in Emmons v. Shaw, 171 Mass. 410, 50 N. E. 1033, it was held that the donor of a power, rather than the donee, must be regarded as the decedent whose estate is liable to taxation under the act im-

posing a tax upon legacies and successions, and this was followed in Balch v. Shaw, 174 Mass. 144, 54 N. E. 490. A similar ruling is also to be found in Re Stuart, 131 N. Y. 274, 30 N. E. 184, 14 L. R. A. 836.

Not only on principle, therefore, but by authority, there seems no escape from the conclusion that the legacies in the present instance passed by virtue of the will of George Crossman, the original testator, in 1882, and not by that of his wife, Hannah, and that they were not, therefore, liable to the tax which the plaintiff, as executor, has been compelled to pay. There are no facts in dispute, the point of law involved being the only matter in controversy, and, this being found against the defendant, the case is in shape for final disposition, the right of the plaintiff to recover being sustained.

Let judgment be entered on the demurrer in favor of the plaintiff for the taxes declared upon, with interest and costs.