ment to the sanitary code. We think the term "market" in section 82 of that Code is broad enough to apply, and was intended to apply, to any premises exclusively devoted to market purposes, and hence that the prohibition is broad enough to include all the Wallabout Market lands acquired by the city of Brooklyn in trust for market purposes.

These views require a reversal of the judgment in each case. All concur.

### In re BUCKINGHAM'S ESTATE.

(Supreme Court, Appellate Division, Second Department. June 9, 1905.)

WILLS—TRANSFER TAX—EXERCISE OF APPOINTMENT.

Laws 1897, p. 150, c. 284, provides that, whenever any person shall exercise a power of appointment derived from any disposition of property made before the passage of the statute, such appointment shall be deemed a transfer taxable in the same manner as though the property to which such appointment relates belonged absolutely to the donee, and had been bequeathed or devised by such donee by will. A will probated in 1888 created a trust in favor of a person for life, with remainder to his children, or to such person as he should appoint in case of failure of issue; and under the collateral inheritance tax law then in force the trust was taxed, but without limitation to the value of the life estate. *Held* that, though the trust was excessively taxed under the inheritance tax law, the right of the cestui que trust's testamentary appointee to succeed to the trust fund was taxable as a transfer effected by the operation of the cestui que trust's will.

Appeal from Order of Surrogate of Dutchess County.

Proceedings for the appraisal, under the taxable transfer act, of the estate of Charles H. Buckingham, deceased. From an order of the surrogate affirming another order in so far as it failed to fix a transfer tax upon a fund passing by appointment under the will, the Comptroller of the state appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and MILLER, JJ.

Joseph Morschauser (Wilfrid H. Sherrill, on the brief), for appellant.

Charles F. Cossum, for respondent.

HIRSCHBERG, P. J. The circumstances disclosed in the record are peculiar, and no case directly in point has been found. The proceedings are instituted in the administration of the estate of Charles H. Buckingham, who died in Dutchess county May 12, 1904, leaving a will which was admitted to probate June 7, 1904. In the will he exercised in favor of his wife, Elizabeth Buckingham, a power of appointment conferred upon him by the will of his uncle Stephen M. Buckingham, who died in Dutchess county December 1, 1887, and whose will was admitted to probate January 17, 1888. Elizabeth Buckingham was not a legatee or devisee under the will of Stephen M. Buckingham, nor was she named therein, either as executrix or otherwise. The decedent, Charles H. Buckingham, left no surviving issue. The appointment transfers a fund of the

present value of $85,477.59, resulting from two trusts, one specific and one residuary, created by the will of Stephen M. Buckingham for the benefit of Charles H. Buckingham during life, with remainder to his children and other lawful lineal issue, and with the power of appointment referred to in default of issue.  The provisions for the trusts so created by the will of Stephen M. Buckingham are contained in the fourth and fifth clauses of the will, and, so far as material to the present controversy, are as follows:

"Fourth. * * * In addition to the foregoing bequest to my nephew, Charles Henry Buckingham, I give and bequeath to the United States Trust Company, of New York, thirty thousand dollars ($30,000), in trust to invest, and from time to time to reinvest the same, in such securities and in such manner as it shall elect, in this State or elsewhere, as it shall elect, and to collect and receive the income thereof, and to pay the same over, as and when collected, less its proper, reasonable, and lawful compensation and commissions, to my said nephew, Charles Henry Buckingham, during the whole term of his natural life, for his sole use and benefit, and, after his death, to pay over the principal of such trust fund to the children of my said nephew, and his other lawful lineal issue, then surviving him, in equal shares, per stirpes and not per capita, for their sole and absolute use, ownership, and enjoyment forever; or, in default of such issue, to pay and deliver the principal of such trust fund to such person or persons, or other appointee or appointees, and in such manner, and in such shares, as my said nephew, Charles Henry Buckingham, shall, by his last will and testament, or other lawful instrument of appointment, in writing, appoint and direct.

"Fifth. All the residue of my estate, real and personal, I direct my Executors and Executrix to divide into four equal parts. * * * One part I give, devise and bequeath to the United States Trust Company of New York, in trust for my nephew, Charles Henry Buckingham, and my niece, Martha Williams Buckingham Wood, both aforesaid, in equal shares, upon the same trusts and conditions specified in the fourth clause of this Will in respect to the trusts therein created for them respectively."

In the fourth clause of the will of Stephen M. Buckingham a bequest was made to the United States Trust Company of New York in trust for the benefit of the testator's niece Martha Williams Buckingham Wood, of the same amount and upon the same conditions as the trust specified in that clause of the will for the benefit of the testator's nephew.

In the year 1888 proceedings were taken under the collateral inheritance law then in force to fix the tax to be paid upon the specific trust created for the benefit of Charles H. Buckingham, and the legacy to him was taxed at the rate of 5 per cent. upon the principal sum of $30,000, notwithstanding the fact that his interest was only that of a life tenant.  On the settlement of the estate of Stephen M. Buckingham in March, 1889, the principal of the residuary share bequeathed for the benefit of Charles H. Buckingham as life tenant amounted to $36,003.24, and that sum was also then taxed at 5 per cent., irrespective of his limited interest therein. Both assessments, amounting together to $3,300.16, were paid when levied, respectively.  The value, however, of Charles H. Buckingham's life interest in the two trust funds was only $42,187, the tax on which would have been $2,109.35.  The transfer tax now chargeable upon the principal of the two trust funds as against Elizabeth Buckingham, at 1 per cent., amounts to $854.77, which added to the $2,109.35 makes a total of $2,964.12.  It follows that the state

has actually received $336.04 more than it would have received, had the taxation been limited in 1888 and 1889 to the value of the life estate, without including either the interests limited by way of remainder, or the contingent possibility of interests to be created by virtue of the power of appointment on failure of the remainders to take effect because of the absence of issue of the life beneficiary.

In order to relieve the estate of Charles H. Buckingham from the possible injustice of an additional tax on the transfer effected by the exercise of the power of appointment, the learned surrogate has determined that the rights now passing under the appointment have already in fact been taxed in advance by the proceedings instituted in 1888, and upon the judicial settlement of Stephen M. Buckingham's estate in 1889, and he has accordingly adjudged that the fund in question is exempt from further transfer taxation. The result of his decision may be just and equitable, but the decision cannot be upheld unless it rests upon a sound legal basis. The process of taxation is statutory, and in a sense arbitrary. In its essence, taxation is forcible rather than equitable. The state reaches out its hand and takes a part of the property of the citizen, and the citizen yields to the spoliation because of the powerful protection which he receives in return. The courts can only see that the process is equitably enforced in the sense that all citizens are treated alike under the operation of equal laws, and that equal remedies are afforded for the redress of inequality or injustice. But the failure of a citizen to remedy a wrong, where a remedy is given for the wrong, cannot justify the perpetration of a subsequent wrong. If A. is overtaxed, that fact cannot relieve B. from taxation; and, if the estate of Stephen M. Buckingham is overtaxed, that fact cannot relieve the estate of Charles H. Buckingham from taxation, notwithstanding that Charles H. may have acquired all his property by will from Stephen M., and by reason of that circumstance a burden may be imposed, greater than would have been sustained, had the previous assessment been free from error. It may be conceded that it was error to tax in 1888 and 1889 the entire principal of the trusts, thus including the remainder interests created by the will of Stephen M. Buckingham; but it was an error which was acquiesced in at the time by all the parties concerned, and which has been acquiesced in by them for more than 18 years. The error has been perpetuated in part, at least, by the indifference of those who might have cured it. The money then erroneously overpaid to the state could have been recovered back by the proceedings provided for in the inheritance tax law, and within the period allowed by the provisions of that law for that purpose. That period, however, has long since expired, as has also the period prescribed by the Code of Civil Procedure for the commencement of a civil action to recover back money erroneously or illegally collected; and the money so erroneously overpaid to the state is therefore not only beyond the reach of litigation, but it is also beyond the power of voluntary relinquishment on the part of the state. In Matter of Hoople, 179 N. Y. 308, 72 N. E. 229, it was held that the right to a refund of the amount of a transfer tax illegally as-

sessed upon property exempt from taxation is not a vested right, but a mere privilege, the extent and duration of which depend entirely upon the language of the statute conferring it, and that while the time within which it may be prosecuted may be restricted, or, if not violative of the Constitution, may be enlarged, yet if the claim as between citizens would be barred by lapse of time, under section 6 of article 7 of the Constitution, neither the state nor any of its representatives can audit, allow, or pay it.

The proceedings by which the inheritance taxes were collected in 1888 and 1889 do not appear to have been instituted by the state, and there is nothing in the record to indicate that they had any relation whatever to the possibility of an appointment by Charles H. Buckingham under his uncle's will. It is impossible, therefore, to hold, as matter of fact, that these taxes were levied in advance upon the interest to which Elizabeth Buckingham now succeeds. It might, indeed, be possible to regard those levies as made in advance upon the remainders created by the will of Stephen M. Buckingham, which remainders finally failed because of the absence of issue of his nephew, but they cannot be regarded as assessments in advance upon the right of Charles H. Buckingham's appointee to take in succession, because such a right was not made taxable until eight years afterwards, viz., in the year 1897. It cannot be assumed that the taxing power anticipated the law as well as the future assessment. By chapter 284, p. 150, of the Laws of 1897, section 220 of the tax law (chapter 908, p. 795, Laws 1896) was amended by the insertion, among other subdivisions, of subdivision 5, which provided that:

"Whenever any person or corporation shall exercise a power of appointment derived from any disposition of property made either before or after the passage of this act, such appointment when made shall be deemed a transfer taxable under the provisions of this act in the same manner as though the property to which such appointment relates belonged absolutely to the donee of such power and had been bequeathed or devised by such donee by will."

In Matter of Vanderbilt, 50 App. Div. 246, 63 N. Y. Supp. 1079, affirmed 163 N. Y. 597, 57 N. E. 1127, it was held that the ultimate right of succession to a fund given by the exercise of a power of appointment was not taxable prior to the amendment of 1897. In Matter of Stewart, 131 N. Y. 274, 30 N. E. 184, 14 L. R. A. 836, it was held, it is true, that under the collateral inheritance act of 1895 the succession to property which passed to the appointee was taxable under the will creating the power, upon the theory that the appointee took it under that will, but that case arose before the amendment of 1897. That that amendment creating a tax upon the appointment when made, as a transfer then made, was a new provision of law, which did not exist theretofore, was distinctly stated in Matter of Harbeck, 161 N. Y. 211, 217, 55 N. E. 850. Chief Judge Parker said:

"The decision of this court in Matter of Miller, 110 N. Y. 216, 18 N. E. 139, is authority for the proposition that the act of 1897 is entitled to consideration at the hands of the court, as a legislative declaration that the subject-matter of the new provisions did not prior thereto constitute a part of the law.

In that case the question was whether a legacy to an adopted child was taxable, the tax having been imposed in 1886, under the law as it then stood. But the Legislature having a year later passed an act expressly exempting adopted children, this court, in determining whether the legacy was taxable under the law as it stood in 1886, said: 'Moreover, the fact that such provision was made by the statute of 1887 (chapter 713, p. 921), and the act of 1885 (Laws 1885, p. 820, c. 483) amended accordingly, must be regarded as a legislative declaration that the law did not, as originally passed, embrace the provisions which the later act supplies.' The legislative declaration in this case—for it amounts to that, at least—seems well founded," etc.

In Matter of Dows, 167 N. Y. 227, 60 N. E. 439, 52 L. R. A. 433, 88 Am. St. Rep. 508, it was held that the tax imposed by the amendment in question is a tax on the right of succession, and not upon the property, and that, in fact and substance, it is the execution and not the creation of the power which passes the property to the appointees. Judge Cullen said (page 231 of 167 N. Y., page 441 of 60 N. E. [52 L. R. A. 433, 88 Am. St. Rep. 508]):

"The decision in Matter of Harbeck, supra, proceeded on the ground that at the time of the exercise of the power of appointment in that case the Legislature had not provided for the taxation of transfers under such powers. But whatever be the technical source of title of a grantee under a power of appointment, it cannot be denied that, in reality and substance, it is the execution of the power that gives to the grantee the property passing under it."

In Matter of Delano, 176 N. Y. 486, 68 N. E. 871, 64 L. R. A. 279, the power of appointment was created by a deed which was executed prior to the passage of any statute imposing a tax upon the right of succession to the property of a decedent. The court held that the amendment of 1897 laid no tax upon the property or on the original disposition of it by deed, but simply upon the exercise of the power by will as an effective transfer for the purposes of the act; that since the Legislature has full and complete control of the making, the form, and the substance of wills, it can impose a charge or tax for doing anything by will; that the fact that there was no statute imposing a succession tax when the original disposition of the property was made and the power was created is immaterial; that that transfer is not taxed, and the statute makes no effort to reach it; but that the practical transfer through the exercise of the power by will is taxed, and nothing else.

In Matter of Walworth, 66 App. Div. 171, 72 N. Y. Supp. 984, it was held by the Appellate Division, in the Third Department, that the amendment of 1897 was designed to change the rule announced by the Court of Appeals prior to the passage of the amendment in Matter of Harbeck, supra, and in many other cases, to the effect that the appointees take by virtue of the will creating the power, and not by virtue of the will under which the power is exercised. And in Matter of Howe, 86 App. Div. 286, 83 N. Y. Supp. 825, affirmed 176 N. Y. 570, 68 N. E. 1118, this court held that the transfer which the amended statute makes taxable is the exercise of the power of appointment, and not the creation of the power, and that consequently the fund affected by the power is not taxable until the time arrives for the exercise of the testamentary power of appointment conferred upon the life beneficiary.

It follows that the transfer tax which is sought to be imposed in these proceedings must be regarded as imposed upon a transfer created by the will of Charles H. Buckingham, and not by the will of Stephen M. Buckingham; that at the time of the settlement of the estate of Stephen M. Buckingham there was no law in existence authorizing the imposition of such a tax; that the imposition of such a tax was not anticipated in fact, and could not have been anticipated in the proceedings by which the inheritance taxes were adjusted and collected in the estate of Stephen M. Buckingham; and that the right of Elizabeth Buckingham to succeed to the fund in question is taxable as a transfer effected by the operation of her husband's will, with the like effect as though such fund belonged absolutely to him, and had been bequeathed to her in and by his will.

The order of the Surrogate affirming his prior order should be reversed, with $10 costs and disbursements, and the prior order entered November 12, 1904, should be modified by striking out the provision which adjudges that the fund of $85,477.59 passing to Elizabeth Buckingham as appointed under the will of the decedent has fully paid the transfer tax, and is exempt from further transfer taxation, and by inserting a provision fixing the transfer tax on such fund at the sum of $854.77. All concur.