In the Matter of the Estate of EMILY PELL COSTER, Deceased.*

Surrogate's Court, Orange County, April 29, 1937.

*255 App. Div. 7ə7.

*Morris & McVeigh* [*Russell Wiggins* and *John A. Lyon* of counsel], for the executors and trustees.

*Seth T. Cole* [*Mortimer M. Kassell* with him on brief], for the State Tax Commission.

TAYLOR, S. Charles Henry Coster died a resident of this county March 13, 1900, leaving a last will and testament which was admitted to probate in and by which, among other things, he gave and bequeathed the residue of his estate (after providing thereout

trusts of specified amounts) to his trustees " to have and to hold in trust for the benefit of my said wife and children and the issue of any deceased children, in the same manner and subject to the same provisions as are mentioned in the ' fourth ' paragraph of this my Will, and after the death of my said wife the same to go as she may provide by Will, or, if she leaves no Will, to go as the law may provide."   (¶ 7.)

The wife, Emily Pell Coster, died August 2, 1933, and by her will directed that the property over which she had been given power of appointment be divided into four parts, one part being allocated to each of the testatrix's two children, and one part set up in trust for the benefit of each of the testatrix's two other children with remainder over in each instance to the issue respectively of the two beneficiaries.

The question arises upon the inclusion in the estate of the testatrix for taxation purposes of this property over which she had power of appointment.   (Tax Law, § 249-r, subd. 7.)

It appears that the tax order entered in the Charles Henry Coster estate in accordance with what the parties apparently assumed was the then existing law provided that the tax upon this remainder be suspended upon the ground that the remainders were of such a nature or so disposed and circumstanced that the persons in whom they would ultimately vest were indeterminable, and that the tax should be determined when vesting should occur.   Pursuant to what was also apparently believed to be the then existing law a compromise was effected by written agreement among the Comptroller, county treasurer and the estate, and the sum of $8,380.76 was paid in compromise.   If these remainder interests are to be taxed in the donee's estate, the amount of tax will be $222,748.35.

It is interesting and perhaps helpful to follow through the changes in the statute respecting taxation of the right to transmit from the dead to the living.

The first Transfer Tax Law in this State was chapter 483 of the Laws of 1885, which was repealed in 1892 by chapter 399, and a new taxing statute enacted.   Then, in 1896 by chapter 908 the then existing statute was repealed and a new statute enacted. Under all of these statutes it was held that contingent remainders should not be taxed until vested.   (*Matter of Roosevelt*, 143 N. Y. 120; *Matter of Hoffman*, Id. 327; *Matter of Curtis*, 142 id. 219.)

Under this system of suspending taxation in all such cases the State could not tell with any reasonable degree of certainty how much revenue might be expected from transfer taxes, for it was quite probable that wills in many large estates provided for life estates or trusts with contingent remainders over, and this con-

dition was called to the attention of the Legislature in 1897 by Comptroller Roberts in his report (pp. xviii–xix) in which he stated that " The collection of the succession or collateral inheritance tax last year was not attended with as satisfactory results as could have been desired. The amount collected was not as large as that of the year previous, while the difficulty and expense of the work of collection seems to be increasing. This is largely due to the ingenuity and skill of lawyers in drafting wills and deeds of trust so as to defeat the provisions of the law. A favorite method with them is the drawing of a will so as to create indeterminate remainders, or trusts, and thus render it impossible to fix the tax until the fulfillment of the conditions under which the trust or life estate is created."

The report continued with the statement that the theory of the law is that if a tax is due upon an estate at the time of the death of the owner it ought to be paid within a reasonable time thereafter, and suggested that a tax should be paid immediately, based upon the theory that the property would ultimately vest in strangers or those relatives who would be subject to the highest tax rate and then when the vesting occurred there could be a refund if the vesting were otherwise. The Legislature did not see fit to at once carry out the Comptroller's recommendation in toto, but did provide by an amendment to section 230 of the Tax Law by chapter 284 of the Laws of 1897, that " When such remainders or expectant estates shall be of such a nature or so disposed and circumstanced that the taxes thereon shall not be presently payable under the provisions of this act, or when property is devised or bequeathed in trust for persons in succession who are not liable at the same rate; or where some of the persons taking in succession are exempt, it shall, nevertheless, be lawful for county treasurers * * * by and with the consent of the Comptroller of the State, expressed in writing, to agree with such trustees and to compound such taxes upon such terms as may be deemed equitable and expedient and to grant discharges to said trustees upon payment of the taxes provided for in such compositions."

The Comptroller in his report to the Legislature of 1899 (pp. xxiii–xxiv) stated that the 1897 amendments had increased the amount of tax paid, but expressed regret that advantage was not generally taken of that part of the statute which permitted compromises, and immediate payment. There were, the Comptroller stated, upon the books of his department transfers of this nature amounting to upwards of $20,000,000 which had arisen during the preceding two years. The suggestion was made that the statute ought to be amended to make immediate payment obliga-

tory. Following this suggestion of the Comptroller the 1899 Legislature, by chapter 76, amending section 230 of the Tax Law, provided that in the case of contingent transfers the highest possible amount of tax that might become due should be determined and should be immediately payable, subject to a refund when the transfers became fixed if it then developed that other than the highest possible tax rate applied. The 1899 amendment made no reference whatever to composition of taxes upon contingent transfers. Apparently there had been many estates prior to the statute of 1899 in which compromises had not been effected, and after this fact was noticed (See Comptroller Morgan's Report to 1900 Legislature, pp. xxx–xxxi) this privilege of compromising was granted by the Legislature by the Laws of 1900, chapter 379, empowering county treasurers with the consent of the State Comptroller, expressed in writing, to enter into agreements with trustees of estates " in which remainders or expectant estates *have been of such a nature*, or so disposed and circumstanced, that the taxes therein *were held not presently payable* * * * to compound such taxes * * * and to grant discharges to said trustees upon the payment of the taxes provided for in such composition." This statute became effective April 11, 1900.

The taxing order in the Charles Henry Coster estate determining that certain specified remainder interests were then indeterminable and not then subject to tax was made on September 10, 1900, and after the effective date of chapter 379 of the Laws of 1900, which was April 11, 1900.

It is earnestly urged by counsel for the State Tax Commission that it is this hiatus between the repeal of the 1897 statute (which provided for compromises) by the Legislature of 1899 and the enactment of the 1900 statute (Chap. 379) that the latter statute was intended to bridge, and that it, the 1900 statute, should not be given a prospective application. It is argued that the statute refers to estates " in which remainders or expectant estates *have been* of such a nature * * * that the taxes therein *were held* not presently payable," and the authorization in the statute is to " compound *such* taxes."

The point is interesting, but as the surrogate views the problem in this particular case, the parties themselves more than thirty-six years ago agreed that the statute did admit of a prospective application, and that construction which had the consent of all interested parties so many years ago should not now be disturbed. (*Brewster* v. *Gage*, 280 U. S. 327.)

While it may very well be said that the State is not estopped by the unauthorized acts of its agents, here was a statute upon the

the construction of which all should concede parties might reasonably have differed, and the State should now be precluded from assuming a contrary position. (*People* v. *Santa Clara Lumber Co.*, 213 N. Y. 61; *People* v. *Ostrander*, 144 App. Div. 860; *Matter of Buffalo Library* v. *Wanamaker*, 162 Misc. 26; *Vermeule* v. *City of Corning*, 186 App. Div. 206; affd., 230 N. Y. 585; *Moore* v. *Mayor*, 73 id. 238; *City of New York* v. *Halsey*, 132 App. Div. 192.)

It would seem that by reason of the enactment of chapter 76 of the Laws of 1899, in effect March 14, 1899, the taxation in estates of all persons dying after that effective date should have been at the highest possible rate, with refund to the estate when all property finally vested if at that time it appeared that the property vested in persons given the benefit of a lower rate, instead of the order determining as it did in this case that the remainders were of such a nature or so circumstanced that the taxes therein were not presently payable. However that may be, the taxing order of September 10, 1900, was not appealed from, nor has it been set aside or modified, and under well-settled principles must now be considered to have settled the law of the case as therein provided. (*Matter of Jesup*, 161 Misc. 618; *LaForge* v. *McGee*, 127 App. Div. 143.)

*Matter of Lewisohn* (107 Misc. 582; affd., 189 App. Div. 931) is strikingly similar to the case in hand. In that case Leonard Lewisohn, who died in 1902, left a will setting up a trust fund for the benefit of his son, Oscar Lewisohn, and granting to the son a power of appointment by will over this trust fund. The tax order, entered April 5, 1904, fixed the tax upon the passing of so much of the estate as absolutely vested and provided for the suspension of taxation on the remainder. Thereafter an agreement was entered into between the Comptroller of the State and the executors with the consent and approval of the Attorney-General by which the tax on the remainder interests, after the life estates of the son and other life beneficiaries, was fixed and adjusted at the sum of $9,482.87, which was one per cent of the aggregate value of all the suspended remainders. (In the case at bar the compromise figure was likewise one per cent, indicating the Comptroller's policy of compromising upon that basis.) Thereafter, and on December 3, 1917, the son died, having exercised the power of appointment by his will. It is immaterial that the mode of proceeding by which the question was raised in the *Lewisohn* case differs from that adopted here. Surrogate COHALAN held that the execution of the so-called composition agreement was within the scope of the powers conferred by statute upon the State Comptroller, that the tax which was the subject of the compromise was the tax on the transfer

of the remainder interest after the son's life estate, and directed that the property over which the son had a power of appointment be omitted from the transfer tax appraisal.

The learned counsel for the State Tax Commission urges that this case should not now be followed because some of the arguments now put forth were not presented in that case. Obviously, the answer to this argument is that a decision in a given case not only extends to all matters actually litigated, but also to those matters which although not expressly determined are comprehended and involved in the thing expressly stated and decided whether they were or were not actually litigated or considered. (*Matter of Jesup*, 161 Misc. 618; *Pray* v. *Hegeman*, 98 N. Y. 351; *Hyatt* v. *Seeley*, 11 id. 52; *Tompkins* v. *Hyatt*, 28 id. 347; *Hull* v. *Hull*, 225 id. 342; *Central Trust Co.* v. *Falck*, 177 App. Div. 501; *Field* v. *Chronik*, 190 id. 501; *Reich* v. *Cochran*, 196 id. 248; *Stewart* v. *Stewart*, 198 id. 337; *Hollenbeck* v. *Ætna Casualty & Surety Co.*, 215 id. 609; *Bridenbaker* v. *Kissell*, 131 Misc. 534; affd., 226 App. Div. 850.)

It is contended that even if we assume the compromise agreement to be valid, this trust fund should be included in the life tenant's gross estate for the purpose of taxation. (Tax Law, § 249-r, subd. 7.) This contention requires an examination of the purpose and accomplishment of the compromise agreement.

The compromise agreement recites the death of Charles Henry Coster on March 13, 1900, leaving a last will and testament and two codicils thereto which were duly admitted to probate in this court on April 9, 1900; the appointment of executors and trustees; the appointment of a guardian of decedent's four infant children; the institution of proceedings for the appraisal under the Transfer Tax Act of the property passing under said will and codicils; summarizes the appraiser's report " wherein and whereby he found, among other things, that the following remainder interests passing under said will and codicils were at present indeterminable and are not now subject to tax," following which are identified five remainder interests; that the county treasurer, feeling " aggrieved and dissatisfied by and with said finding, determination and order of said surrogate, and now proposes to take and prosecute an appeal from said order, finding and decision and every part thereof," together with the other parties to the compromise agreement, being the executors, trustees and the guardians of all the contingent infant remaindermen, were " desirous of compounding the tax upon said remainder estates," agreed that the tax should be compromised at the sum of $8,380.76, then presently payable which should be " in full payment and satisfaction of the transfer tax

which now may be due, or hereafter may become due, upon said remainder estates."

Obviously, there could ultimately be but one vesting of this remainder, either solely or severally, and it was this vesting that was indeterminable and the tax upon which was thus compromised, for the property passed under the will of the donor of the power and not under that of the donee. (*Matter of Burch*, 160 Misc. 342; *Matter of Bradford*, 159 id. 482; *Matter of Stewart*, 131 N. Y. 274; *Matter of Harbeck*, 161 id. 211; *Ebersole* v. *McGrath*, 271 Fed. 995.)

We must assume that the parties had in mind the possibility of taxation of these funds in the estate of the donee, for provision for such taxation was made in 1897 (Chap. 284).

The right of compromise was a valuable and helpful one to the State. Apparently doubt of the constitutionality of the 1897 statute, which for the first time in this State provided for the taxing of the trust corpus in the estate of the donee of a power existed, as the constitutional question was then or shortly thereafter presented to the courts. In this latter connection see *Matter of Vanderbilt* (50 App. Div. 246; affd., 163 N. Y. 597); *Matter of Delano* (82 App. Div. 147; revd., 176 N. Y. 486; Court of Appeals affd., *sub nom. Chanler* v. *Kelsey*, 205 U. S. 466); *Matter of Dows* (167 N. Y. 227; affd., *sub nom. Orr* v. *Gilman*, 183 U. S. 278); *Matter of Pell* (171 N. Y. 48); *Matter of Lansing* (182 id. 238).

Many reasons may be suggested for the compromise and prompt payment of a tax on indeterminable remainders under the statute providing for suspension of taxation in such cases; *e. g.*, the power of appointment might never be exercised, or the donee might appoint the property to the same persons who would have received it had the power not been exercised, in which events the State would be entitled to receive a tax computed upon the minimum rate and in the meantime, perhaps years, be deprived of the use thereof; were the property taxed in the estate of the donee its value would be taken as of the date of the exercise of the power (*Matter of Tucker*, 27 Misc. 616), and there would be the possibility that the property might have been dissipated, or its value considerably lessened by economic causes; the corpus might be of intangible property and the donee at the time of his death might have been a non-resident, thereby placing his estate representatives beyond the jurisdiction of our courts; " collection is imperilled when the State must keep track of the estate through all the changes and chances of an indefinite future. The path of safety is followed when collection is made at once " (*Matter of Parker*, 226 N. Y. 260, 264); a substantial sum in hand is much more useful than a larger sum in litigation, and so on.

The compromise agreement referred to the "transfer tax," that being the characterization then in use, and the point is made that the tax which is now collected under article 10-C of the Tax Law (§§ 249-m–249-mm) is denominated an "estate tax." Call it by whatever name you will, in the last analysis the tax is upon the right of transfer of property from the dead to the living, and a change of name will not alone justify double taxation. The tax is on the shifting of economic benefits of property from the dead to the living. (*Tyler* v. *United States*, 281 U. S. 497; *Nichols* v. *Coolidge*, 274 id. 531; *Reinecke* v. *Northern Trust Co.*, 278 id. 339.)

Having concluded that the parties had in contemplation the compromise and immediate payment of the tax upon the remainders to ultimately vest under the will of Charles Henry Coster, whether directly or through the exercise of the power of appointment under the will of Emily Pell Coster, it follows that if the Legislature intended to include in the gross estate of Emily Pell Coster the value of the property passing by the exercise of this power of appointment without regard to any agreement that may have been made heretofore, it (the Legislature) was powerless so to do for the legislation would be impairing the obligation of this compromise contract. (*Piqua Branch of State Bank of Ohio* v. *Knoop*, 16 How. 369; *Planters' Bank of Miss.* v. *Sharp*, 6 id. 327; *Germania Savings Bank* v. *Suspension Bridge*, 159 N. Y. 362.)

The appointed property should be stricken from the gross estate, and the taxing order amended accordingly.

Settle order on five days' notice or by consent.