## ORR v. GILMAN.

ERROR TO THE SURROGATE'S COURT OF THE COUNTY OF NEW YORK.

No. 351. Argued November 25, 26, 1901.—Decided January 6, 1902.

The provisions of subdivision 5 of the tax law of the State of New York, which became a law April 16, 1897, are not in violation of the Fourteenth Amendment to the Constitution, nor of section 10 of article 1 of the Constitution.

The opinion in *Carpenter* v. *Pennsylvania*, 17 How. 456, although decided before the adoption of the Fourteenth Amendment to the Constitution, correctly defines the limits of jurisdiction between the State and the Federal governments, in respect to the control of the estates of decedents, both as they were regarded before the adoption of the Fourteenth Amendment, and have since been regarded.

The holding of the Court of Appeals of New York, that it was the execution of the power of appointment which subjected grantees under it to the transfer tax, is binding upon this court.

The Court of Appeals did not err when it held that a transfer or succession tax, not being a direct tax upon property, but a charge upon a privilege, exercised or enjoyed under the laws of the State, does not, when imposed in cases where the property passing consists of securities exempt by statute, impair the obligation of a contract within the meaning of the Constitution of the United States.

The view of the Court of Appeals in this case must be accepted by this court as an accurate statement of the law of the State.

DAVID DOWS, Senior, a citizen and resident of the city and State of New York, died March 30, 1890, leaving a last will and testament, which was duly admitted to probate by the Surrogate's Court of New York County on April 14, 1890. The will provided that the legal title to the property mentioned and described in the sixth clause thereof should vest in the executors' names as trustees during the lifetime of testator's son, David Dows, Jr., with power to manage and control the same, and with the duty to pay the net income therefrom to said David Dows, Jr. The will further provided that upon the death of David Dows, Jr., the property should vest absolutely and at once in such of his children him surviving, and the issue of his deceased children as he should by his last will

and testament designate and appoint, and in such·manner and upon such terms as he might legally impose. In and by the eighth clause or paragraph of his said will, David Dows, Senior, devised and bequeathed the legal title to his residuary estate to his executors as trustees, to hold and manage the same, one eighth part in trust during the lifetime of testator's widow, and one-eighth part in trust for each of testator's seven children—one of whom was the said David Dows, Jr. It was made the duty of the trustees to pay over the net income to the respective persons named during their respective lives, and it was provided that, upon the death of each of said persons, the said one eighth part of the residuary estate, with any accumulations and profits, should vest absolutely and at once in such of his or her children, or the issue of such children, as he or she might by his or her last will and testament designate and appoint, and in·such manner and upon such terms as he or she may legally impose. It was provided, in both the sixth and eighth clauses, that if the legatee for life shall die intestate, then the property should vest absolutely and at once in his or her children surviving, share and share alike.

David Dows, Junior, died January 13, 1899, leaving a last will and testament, which was duly admitted to probate by the Surrogate's Court of Westchester County, New York, by the third paragraph or clause whereof, in the exercise of the power of appointment given him in his father's will, he provided that the property mentioned and described in the said sixth and eighth clauses of the will of David Dows, Senior, should vest upon his death in his three children, David, Robert and Kemeth, in a manner therein described.

On October 31, 1900, Bird S. Coler, Comptroller of the city of New York, and Theodore P. Gilman, Comptroller of the State of New York, filed a petition in the Surrogate's Court of New York County, in which, after reciting the foregoing facts, they alleged that the transfer of funds and property of which David Dows, Junior, had the life use and over which he had exercised the power of appointment given him in his father's will, was taxable, and they therefore prayed for the appointment of a transfer tax appraiser, in order that the transfer tax

might be duly assessed and imposed. Thereupon Charles K. Lexow was so appointed, and on January 31, 1901, after having given notice to the said Comptrollers and to the executors and trustees of the last will of David Dows, Senior, and to the executors of the last will of David Dows, Junior, and to the guardians of the minor children of David Dows, Junior, the appraiser filed in the Surrogate's office a report of his valuation of the interests of the three sons of David Dows, Junior, under the respective wills of their father and grandfather. Certain exceptions to this report were filed on behalf of the executors and guardians, the nature of which will hereafter appear. Thereafter, on February 15, 1901, the Surrogate, on the basis of the report of the said appraiser, assessed a transfer tax of upwards of $7000 against each of the respective interests of the three sons of David Dows, Junior. The exceptions to the appraiser's report and to the assessment were, on March 6, 1901, after argument by counsel, overruled, and the Surrogate entered the following order and judgment:

"It is ordered, adjudged and decreed that said report and order so appealed from be and they are hereby affirmed, and that the date when the transfers now taxed were affected was January 13, 1899, that date being fixed because it was the date of the death of David Dows, Junior, the donee of the power contained in the will of David Dows, Senior."

An appeal was taken from the order and decree of the Surrogate to the appellate division of the Supreme Court of New York, and by that court, on March 22, 1901, the order of the Surrogate was affirmed. On appeal duly taken, the Court of Appeals of the State of New York, on May 17, 1901, affirmed the order and judgment of the appellate division of the Supreme Court, and the judgment of the said Court of Appeals and the record of the proceedings were remitted into the Surrogate's Court of New York, to be enforced according to law, and the judgment of the Court of Appeals was on May 28, 1901, made the judgment and order of the Surrogate's Court. And on June 13, 1901, a writ of error to that judgment was allowed, and the cause was brought to this court.

*Mr. Horace E. Deming* for plaintiffs in error. *Mr. Julius Henry Cohen* was on his brief.

*Mr. Jabish Holmes, Jr.,* for defendants in error. *Mr. Edgar J. Levey* was on his brief.

Mr. Justice Shiras delivered the opinion of the court.

This is the case of a so-called transfer tax imposed under the laws of the State of New York. The various contentions of the plaintiffs in error, attacking the validity of the tax, were overruled by the courts of the State, and the cause is now before us on the general proposition that by the proceedings the plaintiffs in error, or those whom they represent as trustees and guardians, have been deprived of the equal protection of the laws of the State of New York, their privileges and immunities as citizens of the United States have been abridged, and their property taken without due process of law, in violation of the Fourteenth Amendment to the Constitution of the United States, and likewise, as to a portion of the property affected, in violation of section 10 of article 1 of the Constitution of the United States.

The first question presented arises out of subdivision 5 of section 220 of the tax law of the State of New York, which reads as follows:

"5. Whenever any person, or corporation, shall exercise a power of appointment, derived from any disposition of property, made either before or after the passage of this act, such appointment, when made, shall be deemed a transfer, taxable, under the provisions of this act, in the same manner as though the property, to which such appointment relates, belonged absolutely to the donee of such power, and had been bequeathed, or devised, by such donee by will; and whenever any person, or corporation, possessing such a power of appointment, so derived, shall omit, or fail, to exercise the same within the time provided therefor, in whole or in part, a transfer, taxable under the provisions of this act, shall be deemed to take place to the extent of such omissions, or failure, in the same manner as

though the persons, or corporations, thereby becoming entitled to the possessions, or enjoyment of the property to which such power related, had succeeded thereto, by a will of the donee, of the power failing to exercise such power, taking effect at the time of such omission, or failure."

This enactment became a law on April 16, 1897. David Dows, Senior, died March 30, 1890, leaving a will containing a power of appointment to his son, David Dows, Junior, which will was duly admitted to probate by the Surrogate's Court on April 14, 1890. David Dows, Junior, died on January 13, 1899, leaving a will, in which he exercised the power of appointment given him in the will of his father, and apportioned the property, which was the subject of the power, among his three sons, who are represented in this litigation by the plaintiff in error.

It is claimed that, under the law of the State of New York as it stood at the time of his death, in 1890, David Dows, Senior, had a legal right to transfer, by will, his property or any interest therein, to his grandchildren, without any diminution, or impairment, then imposed by the law of the State upon the exercise of that right; that his said grandchildren acquired vested rights in the property so transferred, and that the subsequent law, whose terms have been above transcribed, operates to diminish and impair those vested rights. In other words, it is claimed that it is not competent for the State, by a subsequent enactment, to exact a price or charge for a privilege lawfully exercised in 1890, and to thus take from the grandchildren a portion of the very property the full right to which had vested in them many years before.

We here meet, in the first place, the question of the construction of the will of David Dows, Senior. Under and by virtue of that will, did the property, whose transfer is taxed, pass to and become vested in the grandchildren, or did the property not become vested in them until and by virtue of the will of David Dows, Junior, exercising the power of appointment? The answer to be given to this question must, of course, be that furnished us by the Court of Appeals in this case. *Matter of Dows*, 167 N. Y. 227:

" Whatever be the technical source of title of a grantee under

a power of appointment, it cannot be denied that, in reality and substance, it is the execution of the power that gives the grantee the property passing under it. The will of Dows, Senior, gave his son a power of appointment, to be exercised only in a particular manner, to wit, by last will and testament. If, as said by the Supreme Court of the United States, the right to take property by devise is not an inherent or natural right, but a privilege accorded by the State, which it may tax or charge for, it follows that the request of a testator to make a will or testamentary instrument is equally a privilege and equally subject to the taxing power of the State. When David Dows, Senior, devised this property to the appointees under the will of his son he necessarily subjected it to the charge that the State might impose on the privilege accorded to the son of making a will. That charge is the same in character as if it had been laid on the inheritance of the estate of the son himself, that is, for the privilege of succeeding to property under a will."

It will be perceived that, in putting this construction upon the will of David Dows, Senior, the Court of Appeals not merely construed the words of the will but, by implication, applied to the case the provisions of the subdivision 5 of section 220, under which the transfer tax in question was imposed, and thus construed that tax law and affirmed its validity.

While it is settled law that this court will follow the construction put by the state courts upon wills devising property situated within the State, and while it is also true that we adopt the construction of its own statutes by the state courts, a question may remain whether the statute, as so construed, imports a violation of any of the rights secured by applicable provisions of the Constitution of the United States. And such is the contention here.

This court has no authority to revise the statutes of New York upon any grounds of justice, policy or consistency to its own constitution. Such questions are concluded by the decision of the legislative and judicial authorities of the State.

In *Carpenter v. Pennsylvania*, 17 How. 456, the question arose as to the validity, in its Federal aspect, of a law of the State of Pennsylvania imposing an inheritance tax on personal

property which had passed into the possession of an executor before the passage of the act, and which was held by him for the purpose of distribution among the legatees, who were collateral relatives to the decedent. The act was held valid by the Supreme Court of the State, and was brought up to this court by a writ of error, where it was contended that such an act was in its nature an *ex post facto* law, which took the property of an individual to the use of the State, because of a fact which had occurred prior to the passage of the law, and also that the law, in its retroactive effect, impaired the obligation of a contract, in that it was alleged to absolve the executor from his contract, implied in law, to pay over the legacies to those entitled to them, just to the extent that the law required him to pay to the State. The opinion of the court, delivered by Mr. Justice Campbell, was, in part, as follows:

"The validity of the act, as affecting successions to open after its enactment, is not contested; nor is the authority of the State to levy taxes upon personal property belonging to its citizens, but situated beyond its limits, denied. But the complaint is that the application of the act to a succession already in the course of settlement, and which had been appropriated by the last will of decedent, involved an arbitrary change of the existing laws of inheritance to the extent of this tax, in the sequestration of that amount for the uses of the State; that the rights of the residuary legatees were vested at the death of the testator, and from that time those persons were non-residents, and the property taxed was also beyond the State; and that the State has employed its power over the executor and the property within its borders, to accomplish a measure of wrong and injustice; that the act contains the imposition of a forfeiture or penalty, and is *ex post facto*.

"It is, in some sense, true that the rights of donees under a will are vested at the death of the testator; and that the acts of administration which follow are conservatory means, directed by the State to ascertain those rights, and to accomplish an effective translation of the dominion of the decedent to the objects of his bounty; and the legislation adopted with any other aim than this would justify criticism, and perhaps censure.

But, until the period for distribution arrives, the law of the decedent's domicil attaches to the property, and all other jurisdictions refer to the place of the domicil as that where the distribution should be made. The will of the testator is proven there, and his executor receives his authority to collect the property, by the recognition of the legal tribunals of that place. The personal estate, so far as it has a determinate owner, belongs to the executor thus constituted. The rights of the donee are subordinate to the conditions, formalities and administrative control, prescribed by the State in the interests of its public order, and are only irrevocably established upon its abdication of this control at the period of distribution. If the State, during this period of administration and control by its tribunals and their appointees, thinks fit to impose a tax upon the property, there is no obstacle in the Constitution and laws of the United States to prevent it. *Ennis* v. *Smith*, 14 How. 400.

" The act of 1860, in enlarging the operation of the act of 1826, and by extending the language of that act beyond its legal import, is retrospective in its form; but its practical agency is to subject to assessment property liable to taxation, to answer an existing exigency of the State, and to be collected in the course of future administration ; and the language retrospective is of no importance, except to describe the property to be included in the assessment. And as the Supreme Court of Pennsylvania has well said, ' in establishing its peculiar interpretation, it (the legislature) has only done indirectly what it was competent to do directly.' But if the act of 1850 involved a change in the law of succession, and could be regarded as a civil regulation for the division of the estates of unmarried persons having no lineal heirs, and not as a fiscal imposition, this court could not pronounce it to be an *ex post facto* law within the tenth section of the nineteenth article of the Constitution. The debates in the Federal convention upon the Constitution show that the terms ' *ex post facto* laws,' were understood in a restricted sense, relating to criminal cases only, and that the description of Blackstone of such laws was referred to for their meaning. 3 Mad. Pap. 1399, 1450, 1579.) This signification was adopted in this court shortly after its organization, in opin-

ions carefully prepared, and has been repeatedly announced since that time. *Calder* v. *Bull*, 3 Dall. 386; *Fletcher* v. *Peck*, 6 Cranch, 87; 8 Pet. 88; 11 Pet. 421."

It is true that this case was decided before the adoption of the Fourteenth Amendment, but we think it correctly defines the limits of jurisdiction between the state and Federal governments in respect to the control of the estates of decedents, both as they were regarded before and have been regarded since the adoption of the Fourteenth Amendment. It has never been held that it was the purpose or function of that amendment to change the systems and policies of the States in regard to the devolution of estates, or to the extent of the taxing power over them.

In *In re Kemmler*, 136 U. S. 436, it was stated by the present Chief Justice that—

"The Fourteenth Amendment did not radically change the whole theory of the relations of the state and Federal governments to each other, and of both governments to the people. The same person may be at the same time a citizen of the United States and a citizen of a State. Protection to life, liberty, and property rests primarily with the States, and the amendment furnishes an additional guaranty against any encroachment by the States upon those fundamental rights which belong to citizenship, and which the state governments were created to secure. The privileges and immunities of citizens of the United States, as distinguished from the privileges and immunities of citizens of the States, are indeed protected by it; but those are privileges and immunities arising out of the nature and essential character of the national government, and granted or secured by the Constitution of the United States. *United States* v. *Cruikshank*, 92 U. S. 542; *Slaughter Houses Cases*, 16 Wall. 36."

It was said in *De Vaughn* v. *Hutchinson*, 165 U. S. 566, that "It is a principle firmly established that to the law of the State in which the land is situated we must look for the rules which govern its descent, alienation and transfer, and for the effect and construction of wills and other conveyances."

In *Clarke* v. *Clarke*, 178 U. S. 186, the proposition was again announced, as one requiring only to be stated, that the law of

a State in which land is situated controls and governs its trans-
mission by will or its passage in case of intestacy, and that in
this court the local law of a State is the law of that State as
announced by its court of last resort.

In *Magoun* v. *Illinois Trust Co.*, 170 U. S. 283, the validity
of a law of the State of Illinois imposing a legacy and inheri-
tance tax, the rate progressing by the amount of the beneficial
interest acquired, was assailed in the courts of Illinois as being
in violation of the constitution of that State, requiring equal
and uniform taxation. The state court having decided that
the progressive feature did not violate the constitution of that
State, the case came to this court upon the contention that
the establishment of a progressive rate was a denial both of due
process of law and of the equal protection of the laws within the
meaning of the Fourteenth Amendment to the Constitution.
But these contentions were held by this court to be untenable.

See, likewise, *Knowlton* v. *Moore*, 178 U. S. 41, and *Plummer*
v. *Coler*, 178 U. S. 115, wherein were considered the nature of
inheritance tax laws and the extent of the powers of the States
and of Congress in imposing and regulating them.

In the light of the principles thus established we are unable
to see in this legislation of the State of New York, as construed
by its highest court, any infringement of the salutary provi-
sions of the Fourteenth Amendment. There are involved no
arbitrary or unequal regulations, prescribing different rates of
taxation on property or persons in the same condition. The
provisions of the law extend alike to all estates that descend
or devolve upon the death of those who once owned them.
The moneys raised by the taxation are applied to the lawful
uses of the State, in which the legatees have the same interests
with the other citizens. Nor is it claimed that the amount or
rate of the taxation is excessive to the extent of confiscation.

But, it is further urged, that the tax law of the State of New
York, section 221, expressly exempts from taxation, or charge,
all real estate passing to lineal descendants by descent or devise,
and all such descendants so taking title to real estate from
ancestors, and it is said that under the interpretation of this
law by the courts of the State of New York all property which

was real estate at the time of the death of the person owning it continues, as to the lineal descendants, to be real estate, and is therefore exempt from taxation, though such descendants may not enter into possession and enjoyment of the property until years after the death of the ancestor who owned it, and the property in the meantime has been converted into cash or securities.

It is true that the property described in the sixth paragraph of the will of David Dows, Senior, was real estate, but under the powers conferred in the will of David Dows, Senior, the trustees had converted the real estate and held the proceeds as personal property before the death of David Dows, Junior, and it was this personal property which became vested in the grandchildren under the exercise of the power of appointment. The Court of Appeals held that it was the execution of the power of appointment which subjected grantees under it to the transfer tax. This conclusion is binding upon this court in so far as it involves a construction of the will and of the statute. Nor are we able to perceive that thereby the plaintiffs in error were deprived of any rights under the Federal Constitution. The rule of law laid down by the New York courts is applicable to all alike, and even if the view of the Court of Appeals respecting the question was wrong, it was an error which we have no power to review.

Another objection made to the judgment of the Court of Appeals, affirming the Surrogate's order, is that the tax imposed upon transfers made under a power of appointment is a tax upon property and not on the right of succession, and that, as a portion of the fund was invested in incorporated companies liable to taxation on their own capital, and in certain bonds of the State of New York, and in bonds of the city of New York exempt by statute from taxation, such exemption formed part of the contract under which said securities were purchased, and the tax imposed and the proceedings to enforce it were in violation of section 10 of article 1 of the Constitution of the United States forbidding the States to pass laws impairing the obligation of contracts.

The Court of Appeals overruled the proposition that the

transfer tax in question was a tax upon property and not upon the right of succession, and held that when David Dows, Senior, devised this property to the appointees under the will of his son he necessarily subjected it to the charge that the State might impose on the privilege accorded to the son of making a will and that the charge is the same in character as if it had been laid on the inheritance of the estate of the son himself, that is, for the privilege of succeeding to property under a will.

In reaching this conclusion the Court of Appeals cited not only various New York cases but several decisions of this court, the principles of which were thought to be applicable. *Magoun* v. *Illinois Trust Co.,* 170 U. S. 283; *Plummer* v. *Coler,* 178 U. S. 115; *Knowlton* v. *Moore,* 178 U. S. 41; *Murdock* v. *Ward,* 178 U. S. 139.

We think it unnecessary to enter upon another discussion of a subject so recently considered in the cases just cited, and that it is sufficient to say that, in our opinion, the Court of Appeals did not err when it held that a transfer or succession tax, not being a direct tax upon property, but a charge upon a privilege exercised or enjoyed under the law of the State, does not, when imposed in cases where the property passing consists of securities exempt by statute, impair the obligation of a contract within the meaning of the Constitution of the United States.

A further contention is made that the legatees or devisees of the remainders created by the will of David Dows, Junior, are not legally subject to taxation until the precedent estates terminate and the remainders vest in possession.

The Court of Appeals held that the doctrine invoked had no application to the remainders given to the sons of David Dows, Junior; that they are absolute and not subject to be divested or to fail in any contingency whatever; that by statute they are alienable, devisable, descendible, and if the property were real estate, they could be sold on execution against their owners; that by the aid of the table of annuities, upon the faith of which large sums are constantly distributed by the courts, the present value of these remainders is capable of ready

computation; and that, therefore, they are subject to present taxation.

These views of the Court of Appeals must be accepted by us as accurate statements of the law of the State; and though it is claimed in the brief of counsel for the plaintiffs in error that such a construction of the transfer tax law brings it into conflict with the Fourteenth Amendment of the Constitution of the United States, we are unable to approve such a contention. The subject dealt with is one of state law, expounded by state courts. The laws and the construction put upon them apply equally to all persons in a like suitation, and cannot be regarded as conflicting with the provisions of the Federal Constitution. *Magoun* v. *Illinois Trust Co.*, 170 U. S. 283.

Other contentions made in the brief of counsel for the plaintiffs in error seem, so far as our jurisdiction is concerned, to be phases of those heretofore considered and thereby disposed of.

The judgment of the Court of Appeals of the State of New York affirming the judgment of the Surrogate's Court of New York County is

*Affirmed.*

MR. JUSTICE HARLAN concurred in the result.