IN RE ESTATE OF HARRY HIGGINS.

**TAXATION:** Collateral Inheritance Tax—Transfer Under Power of Appointment. A transfer of real estate, under an executed testamentary power to appoint the devisee, is not subject to a collateral inheritance tax.

> Arg. 1. The will which vests the power of appointment also vests the right of succession, and if this latter be *prior* to the enactment of the succession statute, it necessarily follows that no tax is collectible.
>
> Arg. 2. If the right of succession be deemed created when the power of appointment is executed by the donee thereof, and if this be *subsequent* to the enactment of our succession statute, then it must be held that Sec. 1481-a1, Code Supp., 1913, is not comprehensive enough to include such a transfer.

*Appeal from Tama District Court.*—James W. Willett, Judge.

September 23, 1922.

Appeal from judgment dismissing the application of the state treasurer for an order to compel the payment of a collateral inheritance tax. The facts are fully stated in the opinion.—*Affirmed.*

*Ben J. Gibson,* Attorney General, *B. J. Powers,* Assistant Attorney General, *Willard F. Russell,* County Attorney, for appellant.

*Struble & Stiger* and *Heald & Cook,* for appellee.

Arthur, J.—Harry Higgins, a resident of the state of Illinois, died testate, August 14, 1897, seized of 320 acres of land in Tama County, Iowa. The facts admitted by the pleadings or stipulated by the parties are, in substance, as follows: That the will of the said Harry Higgins was duly probated in Cook County, Illinois, and on the 7th day of May, 1901, admitted to probate by the district court of Tama County; that Hiram Higgins qualified as trustee of the property in Tama County, as provided by the will of Harry Higgins; that, upon his death, Lillian Cora Rand, named in said will, declined to qualify as such trustee, after the death of Hiram Higgins, and William R. Higgins, appellee herein, was appointed as such by the district court of Tama County; that Harry Higgins was unmarried, and died without issue, survived by his father, Hiram, his mother, Emma C., and his brother, William R. Higgins, and Lillian Cora Rand, his sister; that Hiram died before Emma C., his wife; that Emma C. died unmarried, on or about September 1, 1912, leaving as her sole heirs at law, William R. Higgins and Lillian Cora Rand. The application of the state treasurer was filed in the office of the clerk of the district court of Tama County.

The clause of the will of Harry Higgins material to this controversy is as follows:

"I give, devise, and bequeath to my father, Hiram Higgins, of Chicago, Illinois, the northeast quarter of Section Num-

ber thirty-one, and the northwest quarter of Section Number thirty-two all in Township eighty-five north, Range thirteen west of the Fourth Principal Meridian situated in the county of Tama in the state of Iowa, in trust nevertheless to take and manage the same and to pay the rent accruing therefrom less the amounts expended for taxes and necessary repair, to my beloved mother, Emma C. Higgins, during her natural life, and at her death to convey said lands to such of my legal heirs as my said mother Emma C. Higgins may designate by her last will and testament, but in the event that my said mother shall fail to make any direction as to the disposition of the same by her last will and testament, then I direct that my said father, Hiram Higgins convey said lands by good and sufficient deed to my heirs, according to the laws of descent now in force in this state. But if at any time said Hiram Higgins shall deem it for the best interest of my mother to sell said real estate and to invest the proceeds thereof in notes, bonds, or other interest-bearing securities or other real estate, I hereby authorize and direct him to do so, taking such notes, bonds, securities or real estate in his name as trustee, and that he retain the possession of the same paying interest, accumulations or rent thereof to my said mother, Emma C. Higgins, and at her death that he deliver said notes, bonds, securities and convey said real estate last mentioned to such of my legal heirs as my said mother may direct in her last will and testament, but in the event of her making no such disposition then said notes, bonds, securities and real estate are to be taken by and distributed among my legal heirs as intestate estate according to the laws of descent now in force in the state of Illinois.''

The clause of the will of Emma C. Higgins material to this controversy is as follows:

''I give, bequeath and devise to my son William R. Higgins, the northeast quarter of Section 31, and the northwest quarter of Section 32, Township 85, north, Range 13, west of Fourth Principal Meridian, situated in Tama County, state of Iowa, the same being the property left in trust by the will of my son Harry Higgins, dated September 16, 1891, and in which it was provided that the net rent accruing therefrom should be paid me during my life and at my death that said land should go to

such of the legal heirs of said Harry Higgins as I may designate in my last will and testament. And I do by this my last will and testament designate my son William R. Higgins, a legal heir of said Harry Higgins, as the party to whom the trustee under said will of Harry Higgins, shall convey said land. In the event, however, that my said son William R. Higgins shall be deceased at the time of my death, I direct that said land shall go to the heirs of said Harry Higgins, according to the laws of descent in force in the state of Illinois at the time the will of said Harry Higgins was made and executed.''

Answer was filed to the application of the state treasurer by William R. Higgins. The court, after a trial upon the issues, found that the state was not entitled to the payment of the tax, and dismissed the application.

It is the contention of appellee that the title to the property under the will vested immediately, upon the death of the testator, in his father and mother, who, under Section 3379 of the Code, 1897, were his sole heirs at law, and that, in any event, the power of appointment was limited to the appointment of a legal heir of the testator's, and that, as William R. Higgins was not such, the appointment in the sixth clause of the will of Emma C. Higgins is wholly void.

The argument of the appellant proceeds on the theory that the transfer of the property, under the power of appointment, is taxable under Section 1481-a, Supplement to the Code, 1913. The collateral inheritance tax law of this state was enacted subsequent to the death of Harry Higgins, the testator, but prior to the appointment by Emma C. Higgins.

We shall first dispose of the contention of appellant; and, as our conclusion thereon is decisive of the controversy, we shall not attempt to construe the will of Harry Higgins, nor do we express an opinion as to the contention of the appellee thereon. For the purpose of this appeal, the validity of the power and of the appointment thereunder will be assumed.

Section 1481-a of the Supplement to the Code, 1913, so far as material, is as follows:

''The estates of all deceased persons, whether they be inhabitants of this state or not, and whether such estate consists of real, personal or mixed property, tangible or intangible, and

any interest in, or income from any such estate or property, which property is, at the death of the decedent owner, within this state or is subject to, or thereafter, for the purpose of distribution, is brought within this state and becomes subject to the jurisdiction of the courts of this state, or the property of any decedent, domiciled within this state at the time of the death of such decedent, * * * which shall pass by will or by the statutes of inheritance of this or any other state or country, or by deed, grant, sale, gift, or transfer made in contemplation of the death of the donor, or made or intended to take effect in possession or enjoyment after the death of the grantor or donor, to any person, or for any use in trust or otherwise, other than to or for the use of persons, or uses exempt by this act shall be subject to a tax of five per centum; * * * Any person beneficially entitled to any property or interest therein because of any such gift, legacy, devise, annuity, transfer or inheritance, and all administrators, executors, referees and trustees, and any such grantee * * * shall be respectively liable for all such taxes to be paid by them respectively.''

The question for decision has not before arisen in this jurisdiction. It must always be borne in mind that the collateral inheritance tax is a tax upon the devolution or the right of succession to property, and not a tax upon the property itself. As our collateral inheritance tax statute was enacted subsequent to the death of the testator, the tax can be imposed in this case, if at all, only upon the right to the succession resulting from the appointment. *Ferry v. Campbell,* 110 Iowa 290. If the right of succession was created when the power of appointment was created, then clearly, the ruling of the court below must be sustained. If, however, the right of succession was created when the donee of the power exercised the power, then the question is one of statutory construction only. The rule adopted by all of the courts of this country is that the testator, and not the one exercising the power of appointment, is regarded as ''the decedent,'' and that the appointee takes under the will, and not through or from the donee of the power. *Emmons v. Shaw,* 171 Mass. 410 (50 N. E. 1033); *Harmon v. Weston,* 215 Mass. 242 (102 N. E. 470); *Hooper v. Hooper,* 203 Mass. 50 (89 N. E. 161); *State v. Probate Court,* 124 Minn. 508 (145 N. W.

390); *Minot v. Stevens,* 207 Mass. 588 (93 N. E. 973); *In re Slosson's Estate,* 216 N. Y. 79 (110 N. E. 166); *In re Dows' Estate,* 167 N. Y. 227 (60 N. E. 439); *Minot v. Paine,* 230 Mass. 514 (120 N. E. 167); *Walker v. Treasurer,* 221 Mass. 600 (109 N. E. 647); *Orr v. Gilman,* 183 U. S. 278 (46 L. Ed. 196); Ross on Inheritance Taxation, Sections 40 and 78.

Prior to the enactment by the legislatures of New York and Massachusetts of statutes specifically taxing transfers under powers of appointment, it was held by the courts of those states that a succession tax could not be imposed thereon. *In re Estate of Stewart,* 131 N. Y. 274 (30 N. E. 184); *In re Harbeck,* 161 N. Y. 211 (55 N. E. 850); *Emmons v. Shaw,* supra. So far as the decisions of the courts of other jurisdictions have been brought to our attention, the duty to pay a succession tax upon transfers under a power of appointment has been upheld only in states where the statute contained a provision specifically subjecting such transfers to the tax. *Emmons v. Shaw,* supra; *Montague v. State,* 163 Wis. 58 (157 N. W. 508), and cases cited, supra.

This is true of all of the decisions of American courts cited by appellant. As already stated, under the uniform holding of the courts of this country, property passing to an appointee is derived from the estate of the decedent, and not from the donee of the power. Emma C. Higgins, under the terms of the will of Harry Higgins, acquired no interest or title in the land in controversy. It passed to William R. Higgins under the will of his brother, or not at all. The only authority with which the will of the testator clothed Emma C. Higgins was to appoint the heir at law of the testator who should receive the Tama County land as a beneficiary under the will. It was a mere naked power of appointment. Even in jurisdictions where property passing to an appointee has been held subject in equity to the payment of the debts of the one exercising the power of appointment, it has been uniformly held that title to the property passed directly from the testator to the appointee. The theory upon which property in transit from one having the power of appointment to the appointee has been held subject, in equity, to the payment of the debts of the former is that, as he had the absolute power of appointment, he should, in good

conscience, name his creditors, rather than his friends or rela-
tives, to whom he was not obligated. The doctrine is applied
only in equity. *Shattuck v. Burrage,* 229 Mass. 448 (118 N. E.
889).

It will be observed that the tax imposed by Section 1481-a,
Code Supplement, 1913, is upon "estates of all deceased per-
sons," and that the statute refers to the "decedent owner"
and "decedent" only. At the time of the death of Harry Hig-
gins, there was no law in this state imposing a succession tax
upon the devolution or the right to the succession of property
of decedents. Unless, therefore, the statute, which must be
strictly construed, in terms imposes the tax upon transfers un-
der powers of appointment, the right to the succession in ques-
tion is not subject to the imposition of the tax. The statute
does not, in terms or by necessary implication, include trans-
fers of the kind in question. It applies to every "deed, grant,
sale, gift, or transfer made in contemplation of the death of the
donor," and "to any person, or for any use in trust or other-
wise, other than to or for the use of persons, or uses exempt by
this act." Transfer by appointment is not included in any of
the words or terms employed in the statute. It necessarily fol-
lows, therefore, that, even upon the theory of the attorney-gen-
eral in this case, the judgment of the court below should be
sustained.

The constitutionality of the New York statutes imposing
a succession tax upon transfers under a power of appointment
has been upheld by the Supreme Court of the United States.
*Orr v. Gilman,* supra; *Chanler v. Kelsey,* 205 U. S. 466 (51 L.
Ed. 882). The statute of the state of New York involved in
*Orr v. Gilman,* supra, was as follows:

"Whenever any person or corporation shall exercise a
power of appointment derived from any disposition of property
made either before or after the passage of this chapter, such
appointment when made shall be deemed a transfer taxable
under the provisions of this chapter in the same manner as
though the property to which such appointment relates belonged
absolutely to the donee of such power and had been bequeathed
or devised by such donee by will."

The court, in passing upon its constitutionality, said:

"In the light of the principles thus established we are unable to see in this legislation of the state of New York, as construed by its highest court, any infringement of the salutary provisions of the Fourteenth Amendment. There are involved no arbitrary or unequal regulations, prescribing different rates of taxation on property or persons in the same condition. The provisions of the law extend alike to all estates that descend or devolve upon the death of those who once owned them. The moneys raised by the taxation are applied to the lawful uses of the state, in which the legatees have the same interests with the other citizens. Nor is it claimed that the amount or rate of the taxation is excessive to the extent of confiscation."

Returning to the contention of appellee that the statute is not retroactive, and that it is not applicable to interests vesting in property created by will in the nature of a remainder, we call attention to what we said in *Lacey v. Treasurer of State,* 152 Iowa 477, 483:

"Specifically, it has been held without any apparent conflict in the authorities that an interest in property created by will or deed in the nature of a remainder becomes a vested interest from the time the will or deed takes effect, and that a subsequent collateral inheritance tax statute has no application to it. Thus, where a will creates a remainder subject to a life estate, with an added power given to the life tenant to dispose of the property if he shall elect to do so, the interest of the remainderman is vested as against a subsequent inheritance tax statute, although it may not be possible to determine until the end of the life estate, and after the taking effect of the statute, what portion, if any, of the property will be left for enjoyment by the remainderman."

It is our conclusion that the judgment of the court below is right, and should be and is affirmed.—*Affirmed.*

Stevens, C. J., Evans and Faville, JJ., concur.