## Commonwealth v. Curtis Publishing Company

*James H. Duff*, Attorney General, for Commonwealth.

*Hull, Leidy & Metzger*, for defendant.

HARGEST, P. J., October 10, 1947.—This case comes before us upon an appeal from the settlement of the corporate net income tax for the year 1942. A petition for resettlement and petition for review were each filed and refused, pursuant to sections 1102 and 1103 of the Fiscal Code of April 9, 1929, P. L. 343; and this appeal taken pursuant to section 1104 of The Fiscal Code.

The question is whether, in making the settlement, there is an unconstitutional discrimination against the obligations of the United States to include, in the tax base, interest on the obligations of the United States issued after March 1, 1941, while the interest on State and municipal securities and dividends on corporate shares is excluded.

The facts have been agreed upon in a stipulation filed, and for the purposes of discussion we find the following:

1. Defendant, the Curtis Publishing Company, is a corporation of the Commonwealth of Pennsylvania, and during the year 1942 was engaged in business in the Commonwealth and subject to corporate net income tax under the Corporate Net Income Tax Act of May 16, 1935, P. L. 208, as reënacted and amended by the Corporate Net Income Tax Act of May 29, 1941, P. L. 62.

2. On April 5, 1943, defendant filed its corporate net income tax report for the year 1942, indicating no tax due, and on November 3, 1943, it filed a "Report of Change" wherein it indicated that tax was due in the amount of $6,066.03.

3. Settlement of the tax, based upon the original report and report of change, was made December 27, 1945, amounting to $6,367.67, which amount has been paid in full.

4. The tax in question was arrived at as follows:

| 1. | Adjusted net income per "report of change" in income filed November 3, 1943, on which the settlement appealed from is based | | $1,033,923.16 |
|---|---|---|---|
| 2. | Deductions allowed by Pennsylvania Corporate Net Income Tax Act | | |
| 3. | Federal taxes | $149,644.11 | |
| 4. | Dividends | 758,565.68 | 908,209.79 |
| 5. | Net income tax base per settlement appealed from | | $125,713.37 |

Applying the three statutory allocation fractions to this net income resulted in net income taxable in Pennsylvania in the amount of $90,966.70, and the tax, at the rate of seven percent, amounted to $6,367.67.

5. The corporate net income tax report forms prepared by, and filed with the Commonwealth, for the years 1935, 1936, 1937, and 1938, incorporated certain portions of the Federal corporation income tax return forms exactly; said portions being the schedules used in arriving at "net income" under the Federal return. The "net income" figure thus adopted by the Commonwealth from the Federal return included interest on the portion of United States securities held by each taxpayer in cases where such interest upon the entire amount of such securities held by the taxpayer was not exempt under acts of Congress from liability for Federal income tax.

6. Pursuant to a stipulation for judgment filed in this court May 8, 1939, in the case of Commonwealth v. Philadelphia Felt Company, no. 624, Commonwealth docket, 1938, and pursuant to a ruling of the Department of Revenue issued June 28, 1939, any interest on United States securities included in the "net income" figure adopted from the Federal returns by the Commonwealth of Pennsylvania and used as the corporate

net income tax base, was deducted from such "net income" figure in acting upon petitions for resettlement of corporate net income tax accounts for the years 1935, 1936 and 1937, and in making original settlements of corporate net income tax accounts for the year 1938.

7. The corporate net income tax report forms prepared and filed with the Commonwealth for the years 1939, 1940, 1941 and 1942, incorporated certain material from the Federal corporation income tax return forms in addition to that which had been incorporated in the Pennsylvania report forms for the years 1935 to 1938, inclusive. This additional portion consisted of the two lines used in the Federal forms for arriving at "adjusted net income", and this "adjusted net income" was used by the Commonwealth as the base for computing the Pennsylvania tax.

8. For the years 1939 and 1940 the "adjusted net income" adopted by the Commonwealth of Pennsylvania from the Federal forms represented a figure which *excluded* all interest on United States securities which had been included in computing "net income". For the years 1941 and 1942 the "adjusted net income" figure, derived from the Federal returns as the base for the Pennsylvania tax, *included* interest on virtually all United States securities issued on and after March 1, 1941, although interest upon United States securities issued prior to that date was deducted from the net income in arriving at such "adjusted net income" figure.

9. The interest on United States securities issued on or after March 1, 1941, was included in "adjusted net income" under the Federal returns for the years 1941 and 1942 and thereafter. This was the result of the adoption, by the Congress of the United States, of the Public Debt Act of 1941, which provided that interest on such securities should be wholly subject to Federal income tax liability.

10. During the years from 1935 to 1942, inclusive, interest on State and municipal securities was entirely exempt from Federal income tax liability and was not included in either gross or net income under the Federal returns.

11. During the year 1942 defendant received interest on State, municipal and foreign securities as follows :

| | |
|---|---:|
| Pennsylvania city, county, borough, etc. | $19,256.25 |
| Commonwealth of Pennsylvania securities | 48,704.09 |
| Republic of Panama securities | 1,531.56 |
| Total | $69,491.90 |

This interest was *entirely excluded* from gross income, net income, and adjusted net income under the Federal return and was, therefore, not included in the figure of $125,713.37 used as the base in computing defendant's 1942 corporate net income tax liability.

12. During the year 1942 defendant received interest on United States securities in the total amount of $76,251.05. Of this amount, $381.91 represented interest on securities which were wholly exempted from Federal income tax liability, and was therefore *excluded* from the gross income and adjusted net income under the Federal return; and $479.52 represented interest on certain United States securities exempt from Federal normal income tax, but which was subject to Federal surtax. The latter item is *excluded* in the "net income" figure indicated in defendant's 1942 Federal return. It was deducted in arriving at "adjusted net income". These two items were excluded from the figure of $125,713.37 used by the Commonwealth of Pennsylvania as a base for computing the 1942 corporate net income tax liability. The balance of the total amount of interest on United States securities received by defendant in 1942, amounting to $75,389.62, represented interest on United States securities issued on and after March 1, 1941, which,

under the provisions of the Public Debt Act of 1941, was wholly subject to Federal income tax liability and was included in the gross income, net income, and adjusted net income figures under the Federal return. This interest, in the amount of $75,389.62, was also included in the figure of $125,713.37 used by the Commonwealth as the Pennsylvania tax base.

13. During the year 1942 defendant received dividends on corporate stocks which it owned, in the amount of $758,565.68, and these dividends were deducted from the "adjusted net income" figure derived from the Federal return and were used by the Commonwealth in computing the Pennsylvania corporate net income tax.

14. In the settlement of tax on gross receipts of private bankers, imposed under the Act of May 16, 1861, P. L. 708, as amended, 72 PS §2221, the Commonwealth excluded from the taxable gross receipts, interest on obligations of the United States and interest on obligations of Pennsylvania. Although this statute does not exempt such interest from liability for the tax, specific provision is made for its exclusion in the tax report forms prepared by and filed with the Commonwealth, including the form filed for the year 1942.

### Discussion

This case squarely raises the right of the State of Pennsylvania to tax the interest on Federal securities when it relieves from tax the interest on the securities of the State or the subdivisions thereof.

The Pennsylvania Corporate Net Income Tax Act of May 16, 1935, P. L. 208, as amended by the Act of 1941, P. L. 62, reads as follows:

" 'Net income.' 1. In case the entire business of the corporation is transacted within this Commonwealth, net income for the calendar year or fiscal year as returned to, and ascertained by the Federal Government, subject, however, to any correction thereof, for

fraud, evasion, or error as finally ascertained by the Federal Government. . . ."

It provides for the application of allocation fractions applied to business done within the Commonwealth; to wages, salaries, commissions, and other compensation assignable to this Commonwealth; and to the gross receipts of the business assignable to the Commonwealth, in order to ascertain the taxable value of the net income attributable to the Commonwealth.

The act of Congress provides for arriving at the "adjusted net income" and the Public Debt Act of February 19, 1941, provides that interest upon obligations of the United States or any agency or instrumentality thereof, and issued on and after the effective date of the act, shall not have any exemption from taxation.

There is no doubt that the interest on obligations of the United States accruing after the Federal Public Debt Act of 1941 would be taxable by the State if the State imposed the same tax on the securities of the State or the municipalities or subdivisions thereof. But the State, having relieved such securities, it is a serious question whether similar securities of the United States may be taxed.

Ever since the decision of M'Culloch v. Maryland, 4 Wheaton 316 (1819), the law has been settled that the States may not discriminate by taxing securities of the United States and relieving their own. This is the case in which Chief Justice Marshall made the famous statement that "the power to tax involves the power to destroy", and held that the people had not intended to reserve to the States the power to (p. 432) "tax all the means employed by the government, to an excess which would defeat all the ends of government". The court concluded that the statute of the State of Maryland exercising the power to tax a branch of the Bank of the United States was unconstitutional and void.

In that case the learned Chief Justice said, page 436:

"This opinion does not deprive the States of any resources which they originally possessed. It does not extend to a tax paid by the real property of the bank, in common with the other real property within the State, nor to a tax imposed on the interest which the citizens of Maryland may hold in this institution, in common with other property of the same description throughout the State."

In Collector v. Day, 11 Wallace 113 (1870), the court said (p. 127) :

"It is admitted that there is no express provision in the Constitution that prohibits the general government from taxing the means and instrumentalities of the States, nor is there any prohibiting the States from taxing the means and instrumentalities of that government. In both cases the exemption rests upon necessary implication, and is upheld by the great law of self-preservation; as any government, whose means employed in conducting its operations, if subject to the control of another and distinct government, can exist only at the mercy of that government. Of what avail are these means if another power may tax them at discretion?"

Pollock v. Farmers' Loan & Trust Company, 157 U. S. 429 (1895), involved, among other things, the constitutionality of a Federal statute which operated to impose tax on income derived from State, county and municipal bonds. The court said, inter alia, page 586:

". . . the tax in question is a tax on the power of the States and their instrumentalities to borrow money, and consequently repugnant to the Constitution."

Generally speaking, a State tax imposed directly on United States securities or the interest derived therefrom cannot be sustained: Weston v. Charlestown, 2 Peters 449 (1829) ; Hamilton Mfg. Co. v. Mass., 6 Wallace, 632, 18 L. Ed. 454 (1862) ; Northwestern Mutual Life Ins. Co. v. Wisconsin, 275 U. S. 136

(1927) ; Missouri ex rel. Missouri Ins. Co. v. Gehner, Assessor, 281 U. S. 313. However, certain State taxes, although measured by the value of United States bonds, may be sustained (Plummer v. Coler, 178 U. S. 115 (1900) ; Orr v. Gilman, 183 U. S. 278 (1900) ), such as a State tax on shares of National banks in the hands of stockholders although the banks own tax-exempt United States bonds (Van Allen v. Assessors, 3 Wallace 573 (1865) ; Des Moines National Bank v. Fairweather Mayor et al., 263 U. S. 103 (1923) ) ; and a similar State tax upon the shares of State banks is valid (Schuylkill Trust Co. v. Pennsylvania, 296 U. S. 113, 302 U. S. 506) ; and franchise or privilege taxes, such as the one imposed in this case, may be measured by net assets, although such assets may include United States securities (Tradesmens' National Bank v. Oklahoma Tax Commission, 309 U. S. 560 (1940) ; Home Ins. Co. v. New York, 134 U. S. 594 (1890) ). Such a tax is valid even though the net income used as a base includes interest on United States securities: Tradesmens' National Bank v. Oklahoma Tax Commission, 309 U. S. 560; Commonwealth v. Central Tube Co., 53 Dauph. 67, 72.

However it is settled, without any exception, that a State tax which discriminates against United States securities, or the interest derived therefrom, is invalid.

In all of the authorities emanating from the Supreme Court of the United States sustaining Federal taxes, the court has emphasized the right of Congress to impose *only* a "non-discriminatory" tax: Willcuts v. Bunn, 282 U. S. 216, 227; Educational Films Corp. of America v. Ward et al., 282 U. S. 379, 392; James v. Dravo Contracting Co., 302 U. S. 134, 157; Graves et al. v. New York ex rel. O'Keefe, 306 U. S. 466, 487; Smith et al. v. Davis et al., 323 U. S. 111, 116; Pacific Co. Ltd. v. Johnson, 285 U. S. 480, 493; in re Kentucky Fuel Gas Corp. et al., 37 F. Supp. 625 (1941), affirmed 127 F. (2d) 657, certiorari denied 317 U. S. 593.

In James v. Dravo Contracting Co., supra, Mr. Justice Roberts, in a dissenting opinion, said (p. 180):

"Of course a state cannot lay a heavier burden upon those contracting with the Government simply because they are such contractors. A discrimination of that nature on its face spells a hostile purpose, an intent to hinder and burden the Government, to impede its operations, and to discourage dealing with it."

In the Kentucky Fuel Gas Corp. case, supra, the court said (p. 626):

"In recent years the Supreme Court has frequently had occasion to review and reconsider the historic problem of implied constitutional limitation on the power of both the State and the National Governments to tax the instrumentalities or activities of the other. (Citing cases.)

"*Whatever changes or modifications of views expressed in earlier opinions these later decisions reflect as to certain aspects of inter-governmental tax immunity, they indicate no departure from the traditional doctrine that the functions, activities and instrumentalities of the Federal Government are immune from all State or local taxation which, in its effect, operates to discriminate against the exercise by Congress of its constitutional powers or which adversely affects the use of the means employed to carry those powers into execution.*" (Italics supplied.)

•   •   •   •   •   •   •   •   •

"In his concurring opinion in Graves v. People of State of New York ex rel. O'Keefe, 306 U. S. 466, 488, 59 S. Ct. 595, 602, 83 L. Ed. 927, 120 A. L. R. 1466, Mr. Justice Frankfurter says: 'Since two governments have authority within the same territory, neither through its power to tax can be allowed to cripple the operations of the other. Therefore state and federal governments must avoid exactions which discriminate against each other or obviously interfere with one another's operations. These were the determining con-

siderations that led the great Chief Justice to strike
down the Maryland statute as an unambiguous meas-
ure of discrimination against the use by the United
States of the Bank of the United States as one of its
instruments of government.' "

When the Kentucky Fuel Gas Corporation case
reached the court of appeals (127 F. (2d) 657), that
court said (p. 660) :

"Recent Supreme Court cases repeatedly emphasize
that the extension of the federal power to tax the
income of state officials and vice versa, of state power
to tax the income of federal officers, as well as the
power to compel payment of taxes by persons who deal
with governmental agencies, exists only in case the
tax is non-discriminatory. (Citing cases.) *There has
been no change in the rule that an implied immunity
arises from undue interference when one governmental
authority imposes its tax burdens on another.* (Citing
the Graves case). Obviously taxing postal savings
certificates, and the deposits which they represent,
five times as much as deposits in banks within the
state, will cripple the extension, and within Kentucky
possibly destroy the use of postal savings. If these
deposits are to be taxed at such a rate in comparison
with ordinary bank deposits throughout the forty-eight
states, the use of postal savings depositories may be
practically terminated. It follows that this tax cannot
be upheld." (Italics supplied.)

The tax in the instant case cannot be sustained un-
less there is some basis for putting the interest on
Federal securities accruing since 1941 in a class dif-
ferent from the interest accruing from the same char-
acter of securities issued by the State or its agencies
or its corporations.

In this connection we are not impressed with the
argument of the Commonwealth that the Public Debt
Act of Congress of 1941 establishes a basis for classifi-
cation so that the State may tax the interest on securi-

ties since the effective date of the act. A date of issue, and nothing more, does not constitute such factual basis as to justify a classification so that Federal securities issued after that date may be taxed and those before may not be, while State securities of the same character issued before or after are relieved from taxation. This is a distinction with too much refinement to buck against the unbroken line of cases prohibiting discrimination in the taxation of Federal securities.

The Commonwealth relies on Colgate v. Harvey, 296 U. S. 404. It is there said (p. 423) : "The question depends here upon whether the income taxed and the income exempted from taxation reasonably can be assigned to different classes." Since we find that there is no basis for any valid classification exempting the State securities and discriminating against the Federal securities, that decision does not apply.

It must not be overlooked that under the Pennsylvania Corporate Net Income Tax Act there is no direct tax upon income but only a tax imposed for the privilege of doing business in Pennsylvania as measured by the net income: Turco Paint & Varnish Co. v. Kalodner et al., 320 Pa. 421; Commonwealth v. Electric Storage Battery Co., 51 Dauph. 90; Commonwealth v. Warner Bros. Theatres, Inc., 51 Dauph. 310; Commonwealth v. Liggett Drug Co., Inc., 56 Dauph. 123; Commonwealth v. Central Tube Co., 53 Dauph. 67.

It follows that there is no basis for any classification to sustain a discrimination which would tax Federal securities and exempt State securities of the same kind.

The effort of the Commonwealth to impose that tax emanates from the language of the Corporate Net Income Tax Act defining "Net Income":

" 'Net Income.' 1. In case the entire business of the corporation is transacted within this Commonwealth, *net income for the calendar year or fiscal year as returned to, and ascertained by the Federal Government,* subject, however, to any correction thereof, for

fraud, evasion, or error as finally ascertained by the Federal Government: . . ." (Italics supplied.)

Whatever confusion arose because of this language, it certainly did not delegate to the Federal Government the power to impose the State tax: Commonwealth v. Warner Bros. Theatres, Inc., 51 Dauph. 310, 345 Pa. 250; Commonwealth v. Central Tube Co., 53 Dauph. 67; National Transit Co. v. Kelly, 44 Dauph. 38.

In Commonwealth v. Central Tube Co., supra, we held that this act now under consideration did not delegate the power to tax to the Federal tribunal. In that we followed Commonwealth v. Warner Bros. Theatres, 345 Pa. 270, where it is said (p. 272) :

"But the Act does not delegate the power to tax to the Federal tribunal, it only takes the net income fixed by it as the base for the excise privilege tax levied by the Commonwealth."

In quoting from another case the court said (p. 273) :

" 'Such adoption was not a delegation to the Federal authorities of the State's power to tax.' We conclude that there has been no delegation of legislative authority."

Parenthetically, much of the argument of the Commonwealth is based upon dissenting opinions: The dissent of Mr. Justice Cardozo in Schuylkill Trust Co. v. Commonwealth, 296 U. S. 113, 123-126; the dissent of Mr. Justice Stone in Colgate v. Harvey, 296 U. S. 404, 441; the dissent of Mr. Justice Brandeis in National Life Ins. Co. v. United States, 277 U. S. 508, 528-530.

Therefore we are not impressed with the argument of the Commonwealth, based upon the dissenting opinion of Mr. Justice Cardozo in the case of Schuylkill Trust Co. v. Commonwealth of Pennsylvania, 296 U. S. 126, that either the statute must show or there must be concrete evidence to show, that it was passed as an act of "unfriendly discrimination". Mr. Justice Cardozo himself said:

" 'Unfriendly discrimination' might be inferred if securities of every kind were excluded from the reckoning with the single exception of the obligations of the national government. That would be an extreme case, the conclusion hardly doubtful. Even though hostility were not so pointed as in the case supposed, there might still be an invidious distinction if securities in substantial competition with evidences of indebtedness issued by the national government had been given a preferred position."

We think that the last sentence of this quotation precisely fits the present case. State securities of the same character as Federal securities have been relieved from taxation while the Federal securities have been taxed. If the words of the statute or the interpretation put upon them by the taxing authorities have the effect of discriminating against the United States, no concrete evidence is necessary to determine that the act was passed as "unfriendly discrimination".

And, moreover, in James v. Dravo Contracting Co., 302 U. S. 134, which involved the constitutionality of a tax imposed by the State of West Virginia on the gross receipts of the company under contracts with the United States, Mr. Justice Roberts said (p. 180):

*"A discrimination of that nature on its face spells a hostile purpose, an intent to hinder and burden the government, to impede its operations and to discourage dealing with it."* (Italics supplied.)

Our own cases of Commonwealth v. Union National Bank of Reading, 51 Dauph. 362, and Commonwealth v. City National Bank of Philadelphia, 52 Dauph. 87, relied on by the Commonwealth, are not in point. There we were construing section 5219 of the Revised Statutes of the United States which provided that States taxes upon shares of National banks "shall not be at a greater rate than is assessed upon other moneyed capital in the hands of citizens of such State coming into competition with the business of National

Banks". There we dealt with the factual question whether there was competition and also whether the tax on the competing capital was lighter.

In Macallen Co. v. Massachusetts, 279 U. S. 620, 630, under the statute there was an attempt to tax Federal as well as State and municipal bonds. As to the first class it was held that the act was unconstitutional, and as to the latter it impaired the obligation of contract. There was no question of discrimination involved. It was there said:

"On the one hand, the state is at liberty to tax a corporation with respect to the doing of its business. On the other hand, the state cannot tax the income of the corporation derived from nontaxable securities. It necessarily follows that the legislature may not, by an artful use of words, deprive this Court of its authority to look beyond the words to the real legislative purpose. And the power and the duty of the Court to do so is of great practical importance."

And we may add that this language applies in the instant case to an artful interpretation of the statute by the taxing authorities.

In this connection, the Commonwealth relies upon the case of Pacific Co., Ltd. v. Johnson, 285 U. S. 480. But in that case the statute was sustained because, as said by the court (p. 496):

"*As it operates to measure the tax on the corporate franchise by the entire net income of the corporation, without any discrimination between income which is exempt and that which is not, there is no infringement of any constitutional immunity.*" (Italics supplied.) Yet three justices dissented on the ground that the self-evident operation of the statute was to indirectly tax the United States bonds.

We therefore conclude that we need no extraneous concrete evidence to prove discrimination when it is apparent from the face of the settlement of the tax.

We might prolong the citation of cases, but we think the case of Commonwealth v. Schuylkill Trust Co., 315 Pa. 429, 296 U. S. 113, is decisive of this question. This court, construing a tax imposed upon shareholders of a trust company, held that the tax was not a tax on assets of the company and that the tax being assessed upon the shares in the hands of shareholders, which was measured by the company's net assets, the State could include in the measure of the tax the value of United States securities, Philippine Island bonds, and Joint Stock Land Bank bonds, although the shares in Pennsylvania corporations which were already taxed or were exempted by the State law were excluded. The Supreme Court of Pennsylvania affirmed our conclusion. But the Supreme Court of the United States held that since no corresponding deduction was made on account of nontaxable bonds of the United States and of its instrumentalities, or on account of National bank shares already taxed as permitted by R. S., sec. 5219, the tax was invalid as discriminating against Federal securities and National bank shares.

Mr. Justice Roberts said, inter alia (p. 120) :

*"If the burden of the tax be lifted in respect of some securities (as it is by confession from those issued by certain Pennsylvania corporations) it must necessarily fall on the remaining securities owned by the company. If the tax is lifted from the shares of certain trust companies because those companies own only stocks already taxed or relieved from taxation by the State, and shares in other trust companies are taxed amongst whose assets there are United States bonds or other securities entitled to exemption because issued by federal instrumentalities, which are figured in the base of the tax, it is impossible to avoid the conclusion that the law discriminates in favor of the former and against the latter solely by reason of ownership of such federal securities."* (Italics supplied.)

After the decision by the Supreme Court of the

United States in the Schuylkill Trust Co. case there was a stipulation for judgment filed May 8, 1939, in the case of Commonwealth v. Philadelphia Felt Co. in this court to no. 624, Commonwealth docket, 1938; and, pursuant thereto the Department of Revenue made a ruling on June 28, 1939, that any interest on United States securities in the "net income" figure adopted from the Federal returns by the Commonwealth of Pennsylvania, and used as the corporate net income tax base, should be thereafter deducted from such net income figure in acting upon petitions for resettlement for the corporate net income tax accounts for the years 1935, 1936 and 1937, and in making original settlements on corporate net income tax accounts for the year 1938. This was the policy adopted until it was changed pursuant to the passage by Congress of the Public Debt Act of 1941.

We might multiply decisions, but we are of opinion that the reasoning in the Schuylkill Trust Company case, as well as in the other applicable decisions of the Supreme Court of the United States, leads to the conclusion that the settlement in this case by the taxing officers of the Commonwealth is invalid.

The statute is capable of constitutional construction, and it must be concluded that the legislature did not intend to violate the Constitution of the United States or of this Commonwealth: Section 52 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §552.

It is hardly necessary to cite cases for the proposition that while the act may be constitutional, its application, in an instant case, may not be: Commonwealth v. Barrett Mfg. Co., 246 Pa. 301; Crew Levick Co. v. Pennsylvania, 245 U. S. 292; Commonwealth v. Standard Oil Co., 101 Pa. 119; Commonwealth v. Westinghouse Air Brake Co., 251 Pa. 12; Commonwealth v. Columbia Gas & Electric Co., 336 Pa. 209; Commonwealth v. Schuylkill Trust Co., 327 Pa. 127, 302 U. S.

506; Commonwealth v. Schuylkill Trust Co., 42 Dauph. 317, 43 Dauph. 258, 261, 327 Pa. 127, 131.

This discussion brings us to the following conclusions of law.

### Conclusions of Law

1. A State tax which discriminates against United States securities is unconstitutional and void, being in violation of article VI, cl. 2, of the Constitution of the United States, which established the Constitution and the laws of the United States as the supreme law of the land, and being in violation of article I, sec. 8, cl. 2, of said Constitution, which grants to Congress the power to borrow money.

2. The "adjusted net income" adopted from the Federal corporation income tax return by the Commonwealth of Pennsylvania as the base used in computing the Pennsylvania corporate net income tax for the year 1942, includes interest on United States securities issued on and after March 1, 1941, but does not include interest on State and municipal securities.

3. The application which the Commonwealth of Pennsylvania has given the Corporate Net Income Tax Act for the years 1941 and 1942, by which "adjusted net income", as derived under the Federal corporation income tax return, is used as a case for computing the Pennsylvania corporate net income tax, results in discrimination against United States securities so as to render this application of the act unconstitutional and void, because it operates to include interest received on United States securities issued on and after March 1, 1941, in the income subjected to the Pennsylvania tax, while interest on State and municipal securities and dividends on corporate shares are excluded from such income.

4. A State tax measured by corporate net income which is computed by including interest on United States securities in the taxable income and by excluding interest on State and municipal securities and divi-

dends on corporate shares from such income, discriminates against United States securities and is unconstitutional.

5. The implied constitutional immunity of United States securities from any form of State tax which is discriminatory against such securities has not been waived by any act of Congress.

6. The statutory adoption of the "net income returned to and ascertained by the Federal Government" as the base for computing the Pennsylvania tax under the Corporate Net Income Tax Act, does not justify or grant the imposition of a tax under such an act which discriminates against United States securities.

7. While the Public Debt Act of 1941 has subjected interest on United States securities issued on and after March 1, 1941, to complete liability for Federal income tax, it does not empower the Commonwealth of Pennsylvania to discriminate against such United States securities by including the interest received thereon in the Pennsylvania corporate net income tax base, while the interest on State and municipal securities is excluded from the Pennsylvania tax base.

8. Even though the Commonwealth of Pennsylvania had adopted the "net income returned to and ascertained by the Federal Government" as the base for the Pennsylvania corporate net income tax, the tax thus imposed is, in every aspect, a tax imposed by the Commonwealth of Pennsylvania, and the principles of law prohibiting the imposition of State taxes which discriminate against United States securities, are just as applicable as would have been the case if the Commonwealth had adopted its own independent method of arriving at the net income to be used as the tax base.

9. The Corporate Net Income Tax Act must be given a constitutional application by affording the same complete exclusion of interest on United States securities from the net income subjected to tax, as is

afforded interest on State and municipal securities and dividends on corporate shares.

10. The corporate net income tax imposed upon defendant for the year 1942 must exclude the interest on United States securities, in the amount of $75,-389.62, from the net income subjected to the Pennsylvania tax.

11. Defendant's 1942 corporate net income tax liability should be computed as follows:

| | | | |
|---|---|---|---|
| 1. | Adjusted Net Income per "Report of Change" filed Nov. 3, 1943 | | $1,033,923.16 |
| 2. | Deductions allowed or required under Pennsylvania Corporate Net Income Tax Act: | | |
| 3. | Federal taxes | $149,644.11 | |
| 4. | Dividends | 758,565.68 | |
| 5. | Interest on U. S. securities | 75,389.62 | 983,599.41 |
| 6. | Net income tax base subject to allocation | | $ 50,323.75 |
| 7. | Allocation percentage | | .723604 |
| 8. | Total taxable income in Pennsylvania | | $ 36,414.46 |
| 9. | Tax on 7% | | $ 2,549.01 |

12. Judgment should be entered for defendant and against the Commonwealth in the amount of $3,818.66 and the Department of Revenue of the Commonwealth should be directed to enter a credit to defendant's 1942 Corporate Net Income Tax Account in the amount of $3,818.66, computed as follows:

| | |
|---|---|
| 1942 corporate net income tax paid by transfer of credit as of June 20, 1939 | $ 301.64 |
| 1942 Corporate net income tax paid November 10, 1943 | 6,066.03 |
| Total payments | $6,367.67 |
| 1942 corporate net income tax properly due | $2,549.01 |
| Total overpayment of 1942 corporate net income tax | $3,818.66 |

*Judgment*

And now, October 10, 1947, defendant having overpaid its 1942 corporate net income tax by the sum of

$3,818.66, judgment is directed to be entered in its favor for that amount and the accounting officers of the Commonwealth are directed to enter upon the books of the company a credit in favor of defendant for that amount, unless exceptions be filed within the time limited by law.